SILVERMAN ET AL. *v.* UNITED STATES.

No. 66.   Argued December 5, 1960.—
Decided March 6, 1961.

*Edward Bennett Williams* argued the cause for petitioners.   With him on the briefs was *Agnes A. Neill.*

*John F. Davis* argued the cause for the United States. On the briefs were *Solicitor General Rankin, Assistant Attorney General Wilkey, Beatrice Rosenberg, J. F. Bishop* and *Julia P. Cooper.*

Mr. Justice Stewart delivered the opinion of the Court.

The petitioners were tried and found guilty in the District Court for the District of Columbia upon three counts of an indictment charging gambling offenses under the District of Columbia Code. At the trial police officers were permitted to describe incriminating conversations engaged in by the petitioners at their alleged gambling establishment, conversations which the officers had overheard by means of an electronic listening device. The convictions were affirmed by the Court of Appeals, 107 U. S. App. D. C. 144, 275 F. 2d 173, and we granted certiorari to consider the contention that the officers' testimony as to what they had heard through the electronic instrument should not have been admitted into evidence. 363 U. S. 801.

The record shows that in the spring of 1958 the District of Columbia police had reason to suspect that the premises at 408 21st Street, N. W., in Washington, were being used as the headquarters of a gambling operation. They gained permission from the owner of the vacant adjoining row house to use it as an observation post. From this vantage point for a period of at least three consecutive days in April 1958, the officers employed a so-called "spike mike" to listen to what was going on within the four walls of the house next door.

The instrument in question was a microphone with a spike about a foot long attached to it, together with an amplifier, a power pack, and earphones. The officers inserted the spike under a baseboard in a second-floor room of the vacant house and into a crevice extending several inches into the party wall, until the spike hit something solid "that acted as a very good sounding board." The record clearly indicates that the spike made contact with a heating duct serving the house occupied

by the petitioners, thus converting their entire heating system into a conductor of sound. Conversations taking place on both floors of the house were audible to the officers through the earphones, and their testimony regarding these conversations, admitted at the trial over timely objection, played a substantial part in the petitioners' convictions.[1]

Affirming the convictions, the Court of Appeals held that the trial court had not erred in admitting the officers' testimony. The court was of the view that the officers' use of the spike mike had violated neither the Communications Act of 1934, 47 U. S. C. § 605, cf. *Nardone* v. *United States,* 302 U. S. 379, nor the petitioners' rights under the Fourth Amendment, cf. *Weeks* v. *United States,* 232 U. S. 383.

In reaching these conclusions the court relied primarily upon our decisions in *Goldman* v. *United States,* 316 U. S. 129, and *On Lee* v. *United States,* 343 U. S. 747. Judge Washington dissented, believing that, even if the petitioners' Fourth Amendment rights had not been abridged, the officers' conduct had transgressed the standards of due process guaranteed by the Fifth Amendment. Cf. *Irvine* v. *California,* 347 U. S. 128.

As to the inapplicability of § 605 of the Communications Act of 1934, we agree with the Court of Appeals. That section provides that ". . . no person not being

---

[1] Alleging that the conversations thus overheard had been the basis for a search warrant under which other incriminating evidence was discovered at 408 21st Street, N. W., the petitioners sought unsuccessfully to suppress the evidence obtained upon execution of the warrant. It is the Government's position that there were ample grounds to support the search warrant, even without what was overheard by means of the spike mike. We deal here only with the admissibility at the trial of the officers' testimony as to what they heard by means of the listening device, leaving a determination of the warrant's validity to abide the event of a new trial.

authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ." While it is true that much of what the officers heard consisted of the petitioners' share of telephone conversations, we cannot say that the officers intercepted these conversations within the meaning of the statute.

Similar contentions have been rejected here at least twice before. In *Irvine* v. *California,* 347 U. S. 128, 131, the Court said: "Here the apparatus of the officers was not in any way connected with the telephone facilities, there was no interference with the communications system, there was no interception of any message. All that was heard through the microphone was what an eavesdropper, hidden in the hall, the bedroom, or the closet, might have heard. We do not suppose it is illegal to testify to what another person is heard to say merely because he is saying it into a telephone." In *Goldman* v. *United States,* 316 U. S. 129, 134, it was said that "The listening in the next room to the words of [the petitioner] as he talked into the telephone receiver was no more the interception of a wire communication, within the meaning of the Act, than would have been the overhearing of the conversation by one sitting in the same room."

In presenting here the petitioners' Fourth Amendment claim, counsel has painted with a broad brush. We are asked to reconsider our decisions in *Goldman* v. *United States, supra,* and *On Lee* v. *United States, supra.* We are told that re-examination of the rationale of those cases, and of *Olmstead* v. *United States,* 277 U. S. 438, from which they stemmed, is now essential in the light of recent and projected developments in the science of electronics. We are favoured with a description of "a device known as the parabolic microphone which can pick up a conversation three hundred yards away." We are told of a

"still experimental technique whereby a room is flooded with a certain type of sonic wave," which, when perfected, "will make it possible to overhear everything said in a room without ever entering it or even going near it." We are informed of an instrument "which can pick up a conversation through an open office window on the opposite side of a busy street." [2]

The facts of the present case, however, do not require us to consider the large questions which have been argued. We need not here contemplate the Fourth Amendment implications of these and other frightening paraphernalia which the vaunted marvels of an electronic age may visit upon human society. Nor do the circumstances here make necessary a re-examination of the Court's previous decisions in this area. For a fair reading of the record in this case shows that the eavesdropping was accomplished by means of an unauthorized physical penetration into the premises occupied by the petitioners. As Judge Washington pointed out without contradiction in the Court of Appeals: "Every inference, and what little direct evidence there was, pointed to the fact that the spike made contact with the heating duct, as the police admittedly hoped it would. Once the spike touched the heating duct, the duct became in effect a giant microphone, running through the entire house occupied by appellants." 107 U. S. App. D. C., at 150, 275 F. 2d, at 179.

Eavesdropping accomplished by means of such a physical intrusion is beyond the pale of even those decisions in

[2] See Hearings before the Subcommittee on Constitutional Rights of the Committee on the Judiciary, United States Senate, 85th Cong., 2d Sess., on Wiretapping, Eavesdropping, and the Bill of Rights; Hearings before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, 84th Cong., 1st Sess., on Wiretapping; Dash, Schwartz and Knowlton, The Eavesdroppers (Rutgers University Press, 1959), pp. 346–358.

which a closely divided Court has held that eavesdropping accomplished by other electronic means did not amount to an invasion of Fourth Amendment rights. In *Goldman* v. *United States, supra,* the Court held that placing a detectaphone against an office wall in order to listen to conversations taking place in the office next door did not violate the Amendment. In *On Lee* v. *United States, supra,* a federal agent, who was acquainted with the petitioner, entered the petitioner's laundry and engaged him in an incriminating conversation. The agent had a microphone concealed upon his person. Another agent, stationed outside with a radio receiving set, was tuned in on the conversation, and at the petitioner's subsequent trial related what he had heard. These circumstances were held not to constitute a violation of the petitioner's Fourth Amendment rights.

But in both *Goldman* and *On Lee* the Court took pains explicitly to point out that the eavesdropping had not been accomplished by means of an unauthorized physical encroachment within a constitutionally protected area. In *Goldman* there had in fact been a prior physical entry into the petitioner's office for the purpose of installing a different listening apparatus, which had turned out to be ineffective. The Court emphasized that this earlier physical trespass had been of no relevant assistance in the later use of the detectaphone in the adjoining office. 316 U. S., at 134–135. And in *On Lee,* as the Court said, ". . . no trespass was committed." The agent went into the petitioner's place of business "with the consent, if not by the implied invitation, of the petitioner." 343 U. S., at 751–752.

The absence of a physical invasion of the petitioner's premises was also a vital factor in the Court's decision in *Olmstead* v. *United States,* 277 U. S. 438. In holding that the wiretapping there did not violate the Fourth Amendment, the Court noted that "[t]he inser-

tions were made without trespass upon any property of the defendants. They were made in the basement of the large office building. The taps from house lines were made in the streets near the houses." 277 U. S., at 457. "There was no entry of the houses or offices of the defendants." 277 U. S., at 464. Relying upon these circumstances, the Court reasoned that "[t]he intervening wires are not part of [the defendant's] house or office any more than are the highways along which they are stretched." 277 U. S., at 465.

Here, by contrast, the officers overheard the petitioners' conversations only by usurping part of the petitioners' house or office—a heating system which was an integral part of the premises occupied by the petitioners, a usurpation that was effected without their knowledge and without their consent. In these circumstances we need not pause to consider whether or not there was a technical trespass under the local property law relating to party walls.[3] Inherent Fourth Amendment rights are not inevitably measurable in terms of ancient niceties of tort or real property law. See *Jones* v. *United States,* 362 U. S. 257, 266; *On Lee* v. *United States, supra,* at 752; *Hester* v. *United States,* 265 U. S. 57; *United States* v. *Jeffers,* 342 U. S. 48, 51; *McDonald* v. *United States,* 335 U. S. 451, 454.

The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. *Entick* v. *Carrington,* 19 Howell's State Trials 1029, 1066; *Boyd* v. *United States,* 116 U. S. 616, 626–630.[4] This

---

[3] See *Fowler* v. *Koehler,* 43 App. D. C. 349.

[4] William Pitt's eloquent description of this right has been often quoted. The late Judge Jerome Frank made the point in more contemporary language: "A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure

Court has never held that a federal officer may without warrant and without consent physically entrench into a man's office or home, there secretly observe or listen, and relate at the man's subsequent criminal trial what was seen or heard.

A distinction between the detectaphone employed in *Goldman* and the spike mike utilized here seemed to the Court of Appeals too fine a one to draw. The court was "unwilling to believe that the respective rights are to be measured in fractions of inches." But decision here does not turn upon the technicality of a trespass upon a party wall as a matter of local law. It is based upon the reality of an actual intrusion into a constitutionally protected area. What the Court said long ago bears repeating now: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." *Boyd* v. *United States,* 116 U. S. 616, 635. We find no occasion to re-examine *Goldman* here, but we decline to go beyond it, by even a fraction of an inch.

*Reversed.*

MR. JUSTICE DOUGLAS, concurring.

My trouble with *stare decisis* in this field is that it leads us to a matching of cases on irrelevant facts. An electronic device on the outside wall of a house is a permissible invasion of privacy according to *Goldman* v. *United States,* 316 U. S. 129, while an electronic device that penetrates the wall, as here, is not. Yet the invasion

in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty—worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle." *United States* v. *On Lee,* 193 F. 2d 306, 315–316 (dissenting opinion).

of privacy is as great in one case as in the other. The concept of "an unauthorized physical penetration into the premises," on which the present decision rests, seems to me to be beside the point. Was not the wrong in both cases done when the intimacies of the home were tapped, recorded, or revealed? The depth of the penetration of the electronic device—even the degree of its remoteness from the inside of the house—is not the measure of the injury. There is in each such case a search that should be made, if at all, only on a warrant issued by a magistrate. I stated my views in *On Lee* v. *United States,* 343 U. S. 747, and adhere to them. Our concern should not be with the trivialities of the local law of trespass, as the opinion of the Court indicates. But neither should the command of the Fourth Amendment be limited by nice distinctions turning on the kind of electronic equipment employed. Rather our sole concern should be with whether the privacy of the home was invaded. Since it was invaded here, and since no search warrant was obtained as required by the Fourth Amendment and Rule 41 of the Federal Rules of Criminal Procedure, I agree with the Court that the judgment of conviction must be set aside.

MR. JUSTICE CLARK and MR. JUSTICE WHITTAKER, concurring.

In view of the determination by the majority that the unauthorized physical penetration into petitioners' premises constituted sufficient trespass to remove this case from the coverage of earlier decisions, we feel obliged to join in the Court's opinion.