Fred M. MAGEE, Plaintiff-Appellant,

v.

Edwin WILLIAMS et al., Defendants-Appellees.

No. 14307.

United States Court of Appeals
Seventh Circuit.
March 17, 1964.

Elmer Gertz, Chicago, Ill., for appellant.

John C. Melaniphy, Corporation Counsel of City of Chicago, Marvin E. Aspen, Chicago, Ill., Sydney R. Drebin, Marvin E. Aspen, Asst. Corporation Counsel, of counsel, for appellees, except Horace Eubanks.

Before SCHNACKENBERG and KILEY, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

Fred M. Magee, plaintiff, appeals from an order of the district court dismissing his complaint against Edwin Williams, Thomas Flounders, James Grant, Anthony Caracci, Walter Maurovich, Francis Bailey, Orlando W. Wilson and Joseph Morris,[1] defendants.

By his complaint, plaintiff sought damages caused by an alleged conspiracy of the defendants while acting under color of law, in their official capacities as police officers of the City of Chicago, to deprive plaintiff of rights, privileges and immunities as a citizen under the Constitution and 28 U.S.C.A. §§ 1331 and 1343, and 42 U.S.C.A. §§ 1981, 1983, 1985 and 1986.

No question as to jurisdiction of the controversy based upon the amount involved is presented.

For the purpose of this opinion we state the facts alleged in the complaint. When it was filed on January 14, 1963, plaintiff was and continuously since May 16, 1947, had been a Chicago police officer of integrity and ability.

In August, 1962 defendants James Grant and Edwin Williams were patrolmen in the Internal Investigation Division of the Chicago Police Department and defendant Horace Eubanks was a Chicago police officer assigned to the 21st District. At that time defendant Thomas Flounders was a sergeant in said Division; defendants Anthony Caracci and Francis Bailey were lieutenants in said Division, Bailey thereafter becoming a captain. Defendant Walter Maurovich at said time was the officer in charge of said Division. Then as when the complaint was filed, Orlando W. Wilson was Superintendent of Police of the City of Chicago, under whose orders and directions the procedures and acts complained of were initiated, encouraged and carried out, particularly with respect to plaintiff. Defendant Joseph Morris is and was the Deputy Superintendent of said Department in charge of the Bureau of Inspectional Services, of which said Internal Investigation Division is a part, and he, in consultation with Wilson, ini-

1. Horace Eubanks was named as a defendant in the complaint but did not appear and was not represented by counsel in the court below or here.

tiated, encouraged and carried out said alleged unlawful procedures and acts.

The complaint states that plaintiff's cause of action arises from the acts and omissions of defendants and unknown persons, who wrongfully and unlawfully acted in concert and confederation in an unlawful conspiracy against plaintiff, which commenced at some time before August 21, 1962 and terminated shortly thereafter, which conspiracy was for the purposes of depriving plaintiff of his said employment as a police officer and damaging his reputation as an honorable and competent officer, in deprivation of rights, privileges and immunities guaranteed to him as a citizen of the United States by the Constitution and laws of the United States. The intent and effect of the said acts and omissions of the said defendants was to deprive plaintiff of property and contractual rights, privacy and personal security and his rights as a citizen without due process of law and in violation of amendments 4, 5 and 14 of the Constitution of the United States and the aforesaid federal Civil Rights Act. Wilson, Morris and other defendants and persons unknown to plaintiff unlawfully caused the purchase of equipment for wire tapping and electronic eavesdropping, which it is charged were expressly prohibited by Illinois law, and set up procedures for the use of said equipment to entrap police officers supposedly suspected of unlawful and improper performance of their duties.

As part of said conspiracy, notwithstanding the absence of any good cause for believing plaintiff was guilty of unlawful and improper conduct, defendants proceeded to use such equipment and procedures against plaintiff.

On or about August 21, 1962, when plaintiff was patrolling his assigned traffic post and Williams drove past him in a car moving 65 miles per hour in a posted 45 mile per hour zone, plaintiff stopped the speeding car at the curb. Plaintiff asked Williams about the vehicle and Williams offered to bribe him so as not to receive a traffic violations ticket, as required by law, which offer plaintiff rejected and performed his duties as a police officer.[2] He maintains that he reasonably suspected that defendant Williams was possessed of a stolen car, informed him that he was under arrest and ordered him to come out of his car. Plaintiff noticed what appeared to be a gun on the person of said defendant. Plaintiff ordered him to face the side of the automobile and to place his arms over his head—the usual procedure in such cases. Believing he had reasonable and lawful grounds for so doing, plaintiff proceeded to search said defendant by reason of what appeared to be a gun on his person. Plaintiff thereupon discovered a hidden recording device which defendants had installed on the person of said Williams, in violation of law and contrary to the rights of plaintiff. This device was intended to record plaintiff's conversation, contrary to law, and to record plaintiff's anticipated acceptance of a bribe offer. As plaintiff attempted to take the illegal recording device from the person of the defendant Williams, defendants Flounders and Grant came and prevented plaintiff from seizing the illegal recording device, informing plaintiff that the said recording device was police department property. Defendant Grant then left the scene with the recording device.

Plaintiff called his superior, Sergeant Lawrence Cusack, who came to the scene. Then a patrol wagon also came and defendant Williams was taken to a police station, where they reported to Captain Robert Harness' office. Besides the Captain, Sergeant Cusack and plaintiff, there were present Assistant Deputy Superin-

---

2. The complaint charges that defendants, and each of them, by themselves or through others, were then and there guilty of one or more of the following: (a) unlawful speeding in violation of Illinois state law; (b) use of a license plate that had been reported stolen, in violation of Illinois state law; (c) use of a stolen driver's license; and (d) using a hidden recording device, in violation of §§ 206.1 and 206.5 of Chapter 38 of the Illinois Revised Statutes.

tendent Merlin Nygren, Lieutenant John Corliss and defendants Flounders, Grant and Williams.

Acting under orders of defendants Wilson and Morris, Nygren ordered that plaintiff release defendant Williams, with all articles taken from him, including the license plate and driver's license. Plaintiff did so and returned to his assigned duty.

The complaint charges that it was the duty of defendant members of the Internal Investigation Division to partake in undercover investigation of members of the police department as a means of checking on the integrity and honesty of policemen only when cause existed therefor and that, by reason of the aforesaid acts of defendants, which were publicized and which violated plaintiff's rights, privileges and immunities under the constitution and laws of the United States, he suffered great injury.

According to the complaint, plaintiff sought to prefer charges against Morris, Bailey, Maurovich, Flounders, Grant and Williams, but, in pursuance of said conspiracy, and in violation of his rights as a citizen of the United States as aforesaid, Wilson and Morris refused permission to plaintiff to do so.

When the cases involving defendant Williams came on for trial in court, plaintiff appeared to testify, but, in furtherance of the conspiracy, a *nolle prosequi* was entered, at the request of the state's attorney, acting under the direction of defendants.

On or about August 17, 1962, plaintiff lawfully arrested defendant Eubanks for aggravated assault involving a deadly weapon, on the complaint of a minor. Plaintiff charges on information and belief that defendant Eubanks, a police officer, persuaded his superiors to attempt an entrapment of plaintiff as aforesaid and to enter the charged conspiracy in order to discredit plaintiff and make him less effective in the matter of the charges against defendant Eubanks.

The motion to strike the complaint and dismiss the cause of action, made on behalf of all the defendants, except Eubanks, is based on the ground of lack of jurisdiction over such matters or, in the alternative, for failure to state a claim upon which relief can be granted, it being averred that the complaint does not indicate violations of 42 U.S.C.A. §§ 1983, 1985 or 1986.

Plaintiff cites as error the dismissal of his complaint, since he claims that it alleges a denial of equal protection of the laws in violation of the fourteenth amendment of the constitution and 42 U.S.C.A. § 1983, and a conspiracy to deny equal protection of the laws, in violation of 42 U.S.C.A. § 1985(3). He maintains that he did not forfeit his basic constitutional right to equal protection of the laws by becoming a Chicago police officer and a public servant.

1. Plaintiff's counsel in his brief admits that the use of the recording device was in pursuance of a necessary police department function, which was the maintenance of internal discipline and the assurance that police officers remained of the highest character and beyond reproach. He further admits that the performance of that duty was practically, if not actually, required by law. It is only the means chosen to carry out this function in this case which he criticizes. Plaintiff's counsel support this conclusion by asserting that the legality of the use of "eavesdropping devices" is controlled by Illinois law. §§ 14–2, 14–4, ch. 38, Ill.Rev.Stat. (1963).

The pertinent part of § 14–2 reads:

"A person commits eavesdropping when he:

"(a) Uses an eavesdropping device to hear or record all or any part of any oral conversation *without the consent of any party thereto.*" (Italics supplied.)

The importance of the words in italics is emphasized by the court in People v. Dixon, 22 Ill.2d 513, 516, 177 N.E.2d 224, (1961), where the court referred to essentially this statute, then known as § 206.1 et seq., ch. 38, Ill.Rev.Stat. (1959),

and said at 22 Ill.2d 516, at 177 N.E.2d 226:

"It is next contended that the action of the police in monitoring Mrs. Nitti's phone call to defendant was a violation of the electronics eavesdropping statute (Ill.Rev.Stat.1959, chap. 38, par. 206.1 et seq.) which made the officer's testimony concerning the conversation inadmissible. The statute by its own terms, however, relates only to the use of 'any device employing electricity' to hear or record all or any part of an oral conversation 'without consent of any party thereto.' Here no such device was used and, since she was cooperating with the police, it would seem that Mrs. Nitti consented to the officer's action. * * * "

It is obvious that defendant Williams consented and hence there was no violation of the Illinois statute. We acquiesced in the rationale of Dixon in United States v. Pullings, 7 Cir., 321 F.2d 287 (1963).

2. Plaintiff contends in his complaint that there was an attempted entrapment of plaintiff. In his brief in support of his contention, he cites merely his own allegation in his complaint that "Williams * * * offered to bribe him" to evade "a traffic violations ticket".

In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, it appears that defendant was tried on a charge of having attempted to bribe an internal revenue agent. A wire recording of a conversation between the agent and the defendant was received in evidence. It recorded a conversation by means of an eavesdropping device secreted on the person of the agent. The court held that entrapment was not shown. At 373 U.S. 434, 83 S.Ct. 1381, 10 L.Ed.2d 462, the court considered the defense of entrapment and at page 438 of 373 U.S., at page 1387 of 83 S.Ct., 10 L.Ed.2d 462 said:

"Once it is plain that Davis could properly testify about his conversation with Lopez, the constitutional claim relating to the recording of that conversation emerges in proper perspective. The Court has in the past sustained instances of 'electronic eavesdropping' against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. See, e. g., Olmstead v. United States, 277 U.S. 438 [48 S.Ct. 564, 72 L.Ed. 944]; Goldman v. United States, 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322]. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. Silverman v. United States, supra [365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734]. The validity of these decisions is not in question here. Indeed this case involves no 'eavesdropping' whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose. And the device was not planted by means of an unlawful physical invasion of petitioner's premises under circumstances which would violate the Fourth Amendment. It was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself."

At 373 U.S. 442, 83 S.Ct. 1389, 10 L.Ed.2d 462 in concurring in the result, Mr. Chief Justice Warren said, in part:

"* * * In the performance of their duty, agents are thus often faced with situations where proof of an attempted bribe will be a matter of their word against that of the tax evader and perhaps some of his associates. They should not be defenseless against outright denials or

 

claims of entrapment, claims which, if not open to conclusive refutation, will undermine the reputation of the individual agent for honesty and the public's confidence in his work. Where confronted with such a situation, it is only fair that an agent be permitted to support his credibility with a recording as Agent Davis did in this case."

██ Traditionally entrapment is available as a defense in a criminal prosecution. This is not such a case. The doctrine of entrapment is a shield; plaintiff would convert it into a sword. We have here a civil action for damages. Plaintiff does not of course complain that he was *convicted* as a result of entrapment. Therefore, we might be justified in treating as irrelevant the contention that an *attempt* to entrap him caused him actionable· damage under the Civil Rights Act. However, we prefer to meet this contention. How was he damaged? It has not been questioned that the general purpose of Superintendent Wilson and the other defendants was to determine *which* police officers were dishonest. That determination would afford a basis for discharging such men. This plan obviously, if successful, would operate for the good of the public as well as every honest police officer. Plaintiff claims that he has always had a reputation as such an officer, an assertion which is not disputed. If his reputation was grounded upon fact, he had nothing to fear if, in the operation of the cleansing plan, there was applied to him, as an honest officer, the same test as was applicable to every other officer. If a driver whom he detained for a violation of law offered him a bribe which he refused, he was not damaged. Only by a later tortuously legalistic resort to the doctrine of entrapment was an effort made to demonstrate that he was damaged, because the conversation between plaintiff and the driver had been electronically recorded. The fallacy lies in the fact that in that conversation, according to plaintiff himself, he said nothing inconsistent with his faithful performance of his duty as an honest police officer.

Stated briefly, plaintiff's complaint shows that, when submitted to a fair test designed for all police officers, he proved himself honest. Undoubtedly he was at the time justifiably gratified. Thereafter a prospect for monetary gain appeared and hence this litigation ensued. However, virtue is its own reward. Certainly there is no federal law that a policeman be awarded damages simply because he did his work honestly.

For these reasons, the order of the district court is affirmed.

Affirmed.