Melvin JONES, Harold James Cutno and
Clifford John Woods, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 21357.

United States Court of Appeals
Fifth Circuit.

Dec. 22, 1964.

Rehearing Denied Feb. 9, 1965.

Adolph J. Levy, Milton P. Masinter, Bernard A. Horton, New Orleans, La., for appellant.

John C. Ciolino, Asst. U. S. Atty., Louis C. LaCour, U. S. Atty., New Orleans, La., for appellee.

Before JONES and BELL, Circuit Judges, and HUNTER, District Judge.

JONES, Circuit Judge:

The appellants and a codefendant, James Gary Martin, were charged in a two-count indictment with a violation of 21 U.S.C.A. § 174. The first count specified certain acts done in conspiracy with each other and the second count specified that the defendants "did unlawfully, wilfully, knowingly and feloniously receive, conceal and facilitate the concealment of 19.88 grams of heroin hydrochloride in 301 capsules, 110 milligrams of bulk heroin hydrochloride and 180 milligrams of heroin hydrochloride in 58 capsules, knowing the same heroin hydrochloride to have been imported in the United States contrary to law."

All defendants filed timely motions to suppress the evidence sought to be used in the trial of this matter. After a hearing on the motion to suppress, the court overruled appellants' motions to suppress. The case was tried and the jury found the three appellants guilty as charged. The defendant James Gary Martin had previously pleaded guilty to the indictment. The court sentenced each of the appellants to six years on each count, the sentences to run concurrently. On this appeal, we review the conviction and sentence.

During the trial the appellants re-urged their objection to the admission of said evidence and moved for directed

verdict of acquittal, both of which were overruled.

The undisputed facts are that Agent Chandler of the United States Bureau of Narcotics heard rumors that narcotics were available somewhere along Shrewsbury Road in Jefferson Parish, Louisiana, at which time he contacted a Mr. Marsalis, the owner and operator of the Marsalis Mansion Motel. Mr. Marsalis indicated suspicions that the occupants of Room 7 were engaged in illegal activity, the type of which was not known. On instructions from Agent Chandler the contents of the wastebasket in Room 7 were saved and shown to the agents. At the request of Agent Chandler, Mr. Marsalis permitted the agents to enter Room 6 of the motel, which is next door to Room 7.

The physical arrangement of the rooms is such that Room 6 and Room 7 have one common party wall. Built into this common wall and forming a part thereof is a dual gas heating unit, designed to warm both rooms. Near the base of this unit is a control panel which lifts out by using a finger in a hole in the panel. The unit as a whole protrudes into each room a few inches. With the panel in place one cannot see or hear into the adjoining room. With the panel removed some vision and hearing are possible. During their vigil the agents removed the panel in Room 6. The corresponding panel in Room 7 had been removed previously by some unknown person.

After the agents had waited about an hour Martin and Cutno arrived in Room 7, followed five minutes later by Jones and Woods. Through the space in the common wall where the heating unit had been located before the removal the agents overheard a conversation among the four occupants of Room 7 concerning the price of heroin, discussion of a place for its concealment, and mention of the involvement of other persons in the narcotics trade. They also overheard a long-distance telephone call to a person apparently their supplier, saw defendant Jones inhale what appeared to be heroin, saw the counting and concealment of capsules appearing to contain heroin, and saw the counting of money. When Jones and Woods started to leave the agents intercepted them in the corridor outside Room 7. Jones dropped a bag containing 301 capsules of heroin as he was arrested. Woods escaped by running down the hall and was captured some time later. Martin and Cutno were arrested in Room 7 and a search disclosed other narcotics. No warrant was sought and none obtained.

■ The sole question presented by the appeal is whether there has been a violation of the appellants' Fourth Amendment right to be secure against an unreasonable search and seizure. The answer to the question will depend upon whether there was a physical intrusion or encroachment within an area protected by the Constitution. Silverman, et al. v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Cullins v. Wainwright, 5th Cir. 1964, 328 F.2d 481, cert. den. 85 S. Ct. 33. Cf. Clinton v. Virginia, 377 U.S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213. In this case there was no invasion of the premises occupied by the appellants. The movable panel was moved, and although it was made movable for a purpose other than the purpose for which the Government agents moved it, there was no penetration of the dividing wall, and it may be noted that no electronic or mechanical devices were here used.

A situation very similar to that which is before us was considered by the Tenth Circuit. The appellants there were in a hotel room. The agents were in an adjoining room. Between the two rooms were back-to-back doors, one opening from each room. The agents, opening the door from their room, were enabled to hear conversations in the adjoining room through the other door. It was held that there was no intrusion and no violation of the rights of those in the adjoining room. Anspach v. United States, 10th Cir. 1962, 305 F.2d 48, 305 F.2d 960, cert. den. 371 U.S. 826, 83

S.Ct. 46, 9 L.Ed.2d 65, reh. den. 371 U.S. 917, 83 S.Ct. 252, 9 L.Ed.2d 176.

The evidence was properly admitted and the judgment of conviction and sentences are

Affirmed.