No. 22268.

JOSEPH FERRELL *v.* RAY VOGT, SHERIFF OF
ARAPAHOE COUNTY.
(423 P.2d 844)

Decided February 14, 1967.    Rehearing denied March 6, 1967.

550

HARRY L. ARKIN, for plaintiff in error.

MARTIN P. MILLER, DOROTHY BINDER, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS proceeding was instituted by Joseph Ferrell, petitioner, to challenge the legality of his incarceration. Although there are some technical deficiences in the pleadings, we have elected to ignore these and to treat the matter as a habeas corpus proceeding.

In order to focus on the constitutional issue raised by petitioner, a brief factual background is essential. The trial court conducted an extensive hearing and made findings of fact relating to the issues raised by the petitioner. On December 23, 1965, one Harry L. Arkin was appointed by the District Court of Arapahoe County to represent petitioner, who was at that time in jail awaiting arraignment on charges of aggravated robbery and conspiracy to commit aggravated robbery. On December 27, 1965, Arkin went to the jail to confer with petitioner.

Petitioner and Arkin were shown to one of the sheriff's "interrogation rooms," which was so marked. The room was regularly used by the sheriff in connection with his criminal law investigative work. Counsel observed the sign on the door and was aware that it was an "interrogation room." Counsel and the petitioner used the room for consultation purposes. There was a

concealed microphone in the room which counsel discovered at the conclusion of his conference with petitioner. The microphone was connected to a tape recorder which was located in a nearby room. It was *possible* to either record or monitor conversations in the interrogation room.

The trial court found that "all the evidence that the court has heard indicates that there was no monitoring or recording of any conversations," between the petitioner and his counsel.

The trial court denied the petition and discharged the writ. We affirm.

■ Petitioner, for the first time in his brief in this court, raised the question of the failure of the sheriff to file a return to the writ. The failure to make a formal return neither invalidates a hearing on the merits nor does it operate to discharge the prisoner. *Bright v. Foster*, 150 Colo. 559, 374 P.2d 865; *Marshall v. Geer*, 140 Colo. 305, 344 P.2d 440.

Petitioner's second contention is that he should have been released from custody because his state and federal constitutional rights had been violated by the presence of a hidden microphone in the room where he was conferring with his attorney. He states it thusly:

"Petitioner contends that the presence of the microphone, through which conversations could be, and are, *listened to* and recorded, constituted a denial of Petitioner's state and federal constitutional rights to due process, assistance of counsel and equal protection in that confidential communications were subject to eavesdropping as a result of which Petitioner was irrevocably prejudiced and as a further result of which he is fearful of further encroachment upon his rights by law officers and prosecutors."

Petitioner relies on C.R.S. 1963, 154-1-7 (3), which provides that: "An attorney shall not be examined without the consent of his client, as to any communication made by the client to him, or his advice given

thereon in the course of professional employment * * *"; on *Gideon v. Wainwright*, 372 U.S. 335, which, by virtue of the fourteenth amendment, extended the same right to counsel to those accused under state statutes which is granted to those charged under federal statutes by virtue of the sixth amendment; on *Silverman v. United States*, 365 U.S. 505, where electronic eavesdropping, accomplished by means of an unauthorized trespass into the premises occupied by petitioners, was condemned; and on *Malloy v. Hogan*, 378 U.S. 1, which extended the privilege against incrimination guaranteed by the fifth amendment to a witness in a state court proceeding.

The respondent does not question the validity or correctness of the law enunciated by the petitioner, only its applicability to the facts as developed in the record which is before this court. We hold that the authorities above enumerated have no application to the present problem. The purpose of the cited statute is to protect an accused from the indirect violation of his state constitutional right against self-incrimination (art. II, § 18). The cited cases extend the rights of the fifth and sixth amendments to state criminal procedings and invalidate wire tap evidence, which is the product of a trespass, because it violated the fourth amendment of the Constitution of the United States.

It is not the intent or purpose of these constitutional mandates to grant immunity from criminal prosecution. The rules which have evolved from the application of these constitutional restraints to various factual situations relate primarily to the actual use which can be made in criminal prosecutions of evidence obtained in violation of those restraints.

*United States v. Coplon*, 185 F.2d 629, is an appropriate example of the above principle. There, the court, speaking through Learned Hand, J., at page 636, said:

"* * * The accused has the burden of proving that the prosecution has in fact 'tapped' his wires; but, if he

succeeds in doing so, the burden falls upon the prosecution to prove that the information so gained has not 'led,' directly or indirectly, to the discovery of any of the evidence which it introduces. * * *."

■■■ We believe *Coplon* provides the proper guidelines. Thus believing, we can only conclude that petitioner not only prematurely attempted to raise the issue, but that *habeas corpus* is not the correct vehicle. It should be brought to the attention of the trial court either by a pre-trial motion to suppress or at the trial when the prosecution offers evidence which the defendant claims is "tainted," because of the manner in which it was obtained by the prosecution.

The judgment is affirmed.

MR. JUSTICE SUTTON specially concurs.

MR. JUSTICE SUTTON specially concurring:

Though I concur in the majority opinion, it is my belief that this court should go further and expressly condemn the use, in places of restraint, *as conference rooms where attorneys confer with their clients*, of any room which contains therein either secret or visible microphones or recording devices.

I contend that federal and state constitutional guarantees of due process of law, equal protection and the right to counsel mean the right to consult an attorney in private and in strict confidence, without the gnawing fear that someone may be eavesdropping or recording the conversation. At the very least, the psychological knowledge of an attorney or his client that someone *may be listening in* is in itself an improper and harmful restraint on full discussion and disclosure between the client and his attorney.

We should keep in mind that an accused may not always find it possible to prove that the prosecution has in fact eavesdropped. Also, even if he can prove such, it is conceivable that information could be illegally ob-

554

tained by eavesdropping that might be harmful to the defense, even though it may not have led to actual tainted evidence. The sooner we publicly brand eavesdropping for what it is, *i.e.*, a forbidden and degrading practice, the sooner it will be eliminated.

To forestall this type of case from arising again, I suggest we use this opportunity to remind those few officials who may not now be so functioning, if there are any, that they have a duty to furnish a safe and proper place where an attorney may freely interview a client who may be in custody, in complete confidence without fear of being overheard in any manner.

In the instant case, in view of the fact that the room in question was labeled "interrogation room" and counsel was aware of the implications connected therewith, I agree that the procedure followed was proper and that this defendant's objections are at the moment premature.