DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Lucas County Court of Common Pleas granting a motion for summary judgment in favor of appellees, Cathy Owens and Cheri Mitchey. For the following reasons, this court reverses the judgment of the trial court and remands for further proceedings consistent with this decision.
 {¶ 2} On appeal, appellant, Diane M. Czerniak, sets forth the following assignment of error:
 {¶ 3} "The trial court erred in granting summary judgment to defendants-appellees Cathy Owens and Cheri Mitchey."
 {¶ 4} The facts relevant to the issues raised on appeal are as follows. Czerniak has a severe respiratory condition that constitutes a permanent and total disability ("PTD") as determined in 1994 by the Ohio Bureau of Worker's Compensation ("BWC"). After appearing in an article published in the ToledoBlade, Czerniak became the subject of a fraud investigation conducted by the BWC. The article indicated she provided a foster home for cats through the Maumee Valley Save-A-Pet organization. The BWC viewed this activity as inconsistent with her disability. Appellees Owens and Mitchey were the fraud investigators assigned to Czerniak's case.
 {¶ 5} In a plan drafted by Owens, appellees agreed to conceal their identities in order to gain access to Czerniak's home. The regional manager of the special investigations unit approved the plan. Owens and Mitchey contacted Czerniak and indicated they wished to adopt a certain cat advertised on the Save-A-Pet website. Appellees knew this cat was in the care of Czerniak. Owens suggested she and Mitchey come to Czerniak's home to view the pet and get more information about the adoption process. An appointment was set for April 26, 2001.
 {¶ 6} When appellees arrived at Czerniak's home on April 26, 2001, they indicated they wished to adopt the cat. They did not disclose that they were investigators from the BWC. Appellees secretly videotaped the entire meeting with a camera concealed inside a purse. Although appellees did find seven cats living in the home, Czerniak's disability allows for indoor pets as evidenced by the BWC original decision granting her PTD status.
 {¶ 7} After this meeting, the BWC and Czerniak's former employer each sought to have her PTD status revoked. Each of these attempts has been unsuccessful and Czerniak currently maintains her PTD status. On April 17, 2003, Czerniak filed her complaint against Owens and Mitchey alleging illegal search and seizure in violation of the Fourth Amendment. After a period of discovery, appellees filed for summary judgment. Although Czerniak did respond to appellees' motion for summary judgment, she never filed for summary judgment on her own behalf. On December 13, 2005, the trial court granted summary judgment to appellees. This appeal followed.
 {¶ 8} Appellant argues that summary judgment was inappropriate. An appellate court reviews summary judgment denovo. Conley-Slowinski v. Superior Spinning Stamping Co.
(1998), 128 Ohio App.3d 360, 363. Summary judgment is appropriate when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 9} The underlying issue is whether the appellees were entitled to a judgment as a matter of law. To succeed in meeting this requirement, appellees must have shown any of three possibilities. Either 1) a search warrant was not required before appellees entered Czerniak's home, or 2) if a warrant was required, Czerniak waived the requirement through consent, or 3) qualified immunity should extend to protect the actions of Owens and Mitchey. Because appellees cannot adequately establish any of the above, summary judgment was inappropriate.
 I. A Warrant Was Required {¶ 10} Fourth Amendment jurisprudence makes clear that a warrant was required. The United States Supreme Court has established bright line rules regarding the necessity of a warrant when entering an individual's home in civil circumstances. Additionally, neither R.C. 4121 nor R.C. 4123 grant BWC employees the special privilege of entering a home without a warrant.
 a. Fourth Amendment Jurisprudence {¶ 11} A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. Katz v. United States (1986),389 U.S. 347, 361. The "core" of the Fourth Amendment is the right to retreat into one's home and be free from governmental intrusion.Silverman v. United States (1961), 365 U.S. 505, 511. Under Fourth Amendment jurisprudence, the home holds a special sanctity that courts are reluctant to violate. See Kyllo v. UnitedStates, 533 U.S. 27, 32 (2001). One's home is a "castle and fortress" where there exists an almost absolute right against "injury and violence." Wilson v. Layne (1999), 526 U.S. 603,609. Thus, generally "no doors * * * can be broken open * * * absent a warrant or exigent circumstances." Id. at 610.
 {¶ 12} In Kyllo, the police suspected the defendant of growing marijuana in his home. Kyllo, supra at 29. They used a sense-enhancing technology to look through the defendant's walls in order to discover where the most heat in his home was coming from. Id. at 30. Based on tips, utility bills and the thermal imaging, police obtained a warrant to search the defendant's home and discovered several marijuana plants. Id. The United States Supreme Court agreed the thermal scans violated the Fourth Amendment because they allowed the police to "physically [intrude] into a constitutionally protected area." Id. at 34.
 {¶ 13} Appellees argue their actions did not violate the Fourth Amendment because they were "undercover." This argument flies in the face of controlling Fourth Amendment jurisprudence. The courts have never allowed a government employee to enter an individual's home without a warrant issued upon probable cause. The only type of "undercover surveillance" permissible without a warrant is simple observation from outside a home. Just as the police in Kyllo, appellees should have acquired a warrantbefore they entered Czerniak's constitutionally protected space.
 {¶ 14} The BWC Operations Manual establishes this point. R.C.4121.32 requires creation of the manual, and specifies that it will govern all BWC policies and procedures. Each employee is required to be familiar with it, and it is available online. Under R.C. 4121.128, the Attorney General is the legal advisor for all BWC employees. The manual contains a letter from then-Ohio Attorney General Lee Fisher. The letter states in pertinent part, "[I]f an agent has to enter on the property of the suspect for surveillance, a warrant is required." BWC Policy Manual (emphasis added). The letter continues, "[I]t is not permissible to enter the suspect's property to get a `better look' * * * [i]f the agent has to go to extraordinary measurers to obtain the evidence, he or she probably needs a warrant." Id. Appellees went beyond the ordinary. They fabricated identities and false pretenses in order to gain admittance to Czerniak's home. Had they followed the bureau's own policy, they would have secured a warrant before entering the home.
 b. R.C. 4121 R.C. 4123 {¶ 15} Appellees argue their actions were permissible under state statutes extending them investigatory powers. R.C. 4121 and R.C. 4123 govern the BWC and their investigators. R.C. 4121.13
limits the inquisition powers to those expressly delineated in R.C. 4121 and R.C. 4123. Although R.C. 4121.13(F) and 4121.13(G) imply investigators have broad-reaching discretion regarding how to investigate, R.C. 4121.40 mandates that investigators follow all the rules established and published in the BWC's Operations Manual. As stated above, one such rule requires a warrant when searching a home.
 {¶ 16} R.C. 4123.511(A) grants investigators power to gather information in a "manner most appropriate" but R.C.4123.511(G)(2) subjects investigators to good faith determination of what is appropriate. Nothing in either section expressly allows an investigator the special privilege of conducting warrantless searches in an "undercover" manner. Given the express limitation contained in the BWC manual, appellees' argument that their actions were in good faith must fail.
 2. Czerniak Did Not Give Voluntary Consent {¶ 17} One of the clear exceptions to Fourth Amendment jurisprudence is the doctrine of consent. It is axiomatic that when a business owner invites the public into an area to conduct business, the owner has no protection under the Fourth Amendment.United States v. Knotts (1983), 460 U.S. 276, 281-282. Where an individual intentionally exposes a constitutionally protected area to the public, the individual waives any expectation of privacy. See Katz, supra at 351. However, granting entry into an area does not necessarily equate to consent to search that area. State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141, 143. Free and voluntary consent is determined by examining the totality of the circumstances. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 227. Consent gained by deception is neither free nor voluntary. Pi Kappa Alpha, supra at 144. To rely on the consent exception, the state must demonstrate by "clear and positive" evidence the consent was freely given. State v. Posey
(1988), 40 Ohio St.3d 420, 427.
 {¶ 18} Here, the state has failed to meet its burden and the trial court's reliance on Posey was inappropriate. Rather, the trial court should have relied on Pi Kappa Alpha. Posey
involved a police officer who gained entry into a Fraternal Order of Eagles ("FOE") lodge that engaged in illegal gambling.Posey, supra at 427. The officer used an informant who was a member of the lodge to gain access as a guest. Id. The doorman did not ask the officer his purpose for attending and the officer did not disclose he was a member of law enforcement. Id. at 428. He later secured a search warrant based on what he observed during that visit. Id. In rejecting the FOE's claims, the court noted there was nothing "deceptive" about the officer's entry onto the property. Id. The doorman had failed to question why the officer was there, and therefore consent was "freely given" by the FOE. Id. at 428-429.
 {¶ 19} Pi Kappa Alpha involved undercover agents investigating allegations of illegal liquor sales at a fraternity house. Pi Kappa Alpha, supra at 144. The agents fabricated a story about being former Georgia members of the fraternity trying to persuade a sibling to join the local house. Id. The Pi KappaAlpha house manager consented to let the agents into the fraternity house for the sole purpose of recruiting a potential member. Id. That the undercover agents witnessed illegal liquor sales while in the fraternity house was incidental. Id. In evaluating these circumstances, the Ohio Supreme Court declared, "consent obtained through deception cannot be said to have been given freely and voluntarily." Id. at 144.
 {¶ 20} The Posey court specifically distinguished the circumstances before it from its decision in Pi Kappa Alpha,
supra. It stated, "The most important distinction between this case and the Pi Kappa Alpha case is the purpose for which the invitation to enter was executed * * * [there the] invitation extended * * * was clearly made for the purpose of exhibiting the fraternity house with the probable goal of recruiting a potential member. * * * There was no relationship between the invitation and the illegal sales of beer being conducted within the house."Posey, supra at 429. If the purpose for extending the invitation is a legal activity, Pi Kappa Alpha governs. Therefore, because fostering cats is a legal activity, Czerniak's situation falls under Pi Kappa Alpha.
 {¶ 21} Czerniak's allowed appellees into her home to see the cat that was up for adoption based solely on identities they had fabricated. Moreover, her home is not a center of criminal enterprise as required under Posey and Pi Kappa Alpha. In fact, it is simply not a commercial center of any kind. Although appellees would normally have viewed the cat at an adoption center, by contacting Czerniak directly, appellees were able to suggest the meeting to take place in her home. This was their ultimate goal and Czerniak unknowingly agreed. There is no evidence in the record Czerniak invited potential adopters into her home before or after this incident. Nothing suggests this was anything more than a one-time accommodation. Therefore, Czerniak's home was not a center of commercial activity, let alone a center of criminal activity as required under Posey
and Pi Kappa Alpha.
 {¶ 22} Czerniak did not give free and voluntary consent to appellees. She did not waiver her right to privacy under the Fourth Amendment, even though she allowed Owens and Mitchey into her home. As the court noted in Pi Kappa Alpha, just because an individual invites a government agent into a residence to transact business that does not mean the agent may search for incriminating evidence. Pi Kappa Alpha, supra at 143.
 3. Qualified Immunity Does Not Extend to Appellees {¶ 23} Qualified or Good Faith immunity may protect governmental actors with less complex discretionary responsibilities. Harlow v. Fitzgerald (1982), 457 U.S. 800,806-807. It extends to cover discretionary actions so long as the actor does not violate clearly established constitutional rights.Mitchell v. Forsyth (1985), 472 U.S. 511, 524. If the actor knew or should have known of the right, there will be no immunity. Id. Government officials know or should know what regulations govern them. Id. However, a showing of qualified immunity entitles the government agent to summary judgment.Harlow, supra at 808. This standard acts as a check so that government actors will consider the Fourth Amendment before
taking action. Mitchell, supra at 524.
 {¶ 24} The evidence presented above demonstrates that Owens and Mitchey knew or should have known their actions would violate Czerniak's Fourth Amendment rights. The warrant requirement is well established, and the manual governing their conduct expressly counseled them to get one. Additionally, because the search violated Czerniak's rights, any information or evidence coming from that search is the "fruit of a poisonous tree," and its admission into evidence is improper. Thus, qualified immunity cannot extend to insulate their actions.
 {¶ 25} Given the reasons listed above, it is clear summary judgment was inappropriate. Before entering Czerniak's home, a warrant was required. Owens and Mitchey's deception invalidated any consent they received. Czerniak's fostering and adoption of cats is a legal activity. Finally, because Owens and Mitchey violated Czerniak's clearly established constitutional rights, qualified immunity does not extend to them. Therefore, appellant's sole assignment of error is found well-taken.
 {¶ 26} On consideration whereof, this court finds appellant was prejudiced and the judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded to the Lucas County Court of Common Pleas for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Parish, concur.