ERDMANN, Judge
(concurring in the result):
Because I would, find that the search in this case violated Weston’s Fourth Amendment rights, I respectfully disagree with the holding of the majority opinion. However, I agree with that portion of the Chief Judge’s opinion concurring in the result pertaining to inevitable discovery because I agree that the evidence would have been inevitably discovered and thus admissible under Military Rule of Evidence 311(b)(2). I therefore concur in the result.
The Fourth Amendment protects against unreasonable searches and seizures, and “[a]t the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.” Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). ‘With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.” Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (citations omitted). A well recognized exception to a warrantless search, however, is one in which an individual whom the police reasonably believe possesses common authority over the premises consents to the search. Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); see also United States v. Matlock, 415 U.S. 164, 170, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The issue presented in this case — whether consent by one tenant is valid against another tenant who has already refused such consent — is an area of law that is still in development.
Staff Sergeant Weston came home to find a military policeman stationed outside his family’s home. The military policeman told Weston that his presence was requested at the military police station. Weston and his wife then drove to the station, followed by the military policeman. Upon their arrival, Weston and his wife were separated, and Agent Stevenson took Weston to her office to question him. Stevenson informed Weston of the offenses he was suspected of committing and advised him of his rights under Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2000). Having received this rights advisement, Weston invoked his right to remain silent and to consult with an attorney. Despite this clear invocation, Stevenson then sought Weston’s consent to search his marital home. Weston unequivocally objected to any search.
Following Weston’s objection, Stevenson left him in her office and went to speak with Mrs. Weston. Stevenson obtained Mrs. Weston’s consent to search the couple’s home without informing her that her husband had refused to give his consent. Mrs. Weston testified that she thought that her husband had given his consent to the search. After Stevenson had obtained Mrs. Weston’s consent, she had Weston escorted from her office to the holding area of the military police station. There Weston used his cell phone to call an attorney friend, but the call was observed and Stevenson took his cell phone away. Several agents then left with Mrs. Weston and went to the couple’s marital home where they commenced the search. Weston was detained incommunicado in the holding area at the military police station during this period of time.
The majority opinion finds that Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), does not control the outcome in this case as Weston was not physically present at his home when he objected to the search. United States v. Weston, 67 *397 M.J. at 393-94 (C.A.A.F.2009). In Randolph, both the husband and wife were present at the threshold of the home and the husband objected to the search while his wife consented. Randolph, 547 U.S. at 107, 126 S.Ct. 1515. The Supreme Court held that a physically present cotenant’s consent was invalid where another physically present coten-ant objected. Id. at 120, 126 S.Ct. 1515. The decision did not address the situation where two cotenants were asked for consent to search while at a police station and one objected and the other consented. While Randolph is factually distinguishable from this situation, it does provide some general Fourth Amendment guidance in this area.
In analyzing cotenant consent cases after Randolph, courts have disagreed as to whether Randolph applies only to those situations where the objecting cotenant is present at the premises to be searched or whether it is equally applicable to a eotenant who has objected but is not physically present at the premises.[1] Under the circumstances of this case, that determination need not be made as Randolph contained the following exception:
So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant’s permission when there is no fellow occupant on hand, the other according dis-positive weight to the fellow occupant’s contrary indication when he expresses it.
Id. at 121-22, 126 S.Ct. 1515.[2]
After Weston objected to the search, officers obtained consent from his wife without informing her that her husband had just refused consent. While the officers went to the marital home and commenced the search, Weston was detained at the military police station incommunicado. During the search Weston’s wife received a phone call from the lawyer whom her husband had talked to on his phone before it was taken away. She learned that her husband had not given his consent to the search and was told she could revoke her consent to the search, which she did.
The question here is whether there is “evidence that the police ... removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection.... ” Randolph, 547 U.S. at 121, 126 S.Ct. 1515. There is no question as to whether there was a “possible objection” since the police were fully aware that Weston had objected to the search and would not give his consent. *398 While Weston was not under arrest, he was detained at the military police building in the holding area and deprived of his cell phone during the period of the search.
If, as the majority holds, physical presence is required to overcome a cotenant’s subsequent consent, then a situation where law enforcement officers keep an objecting coten-ant from returning to his marital home where he could again voice his objection and do not allow him to communicate that objection to his spouse falls clearly within the Randolph exception. Faced with a similar situation, the United States Court of Appeals for the Ninth Circuit held “[i]f the police cannot prevent a co-tenant from objecting to a search through arrest, surely they cannot arrest a co-tenant and then seek to ignore an objection he has already made.” Murphy, 516 F.3d at 1124-25. In this case, Weston was not even under arrest.
While the majority opinion relies on an earlier Supreme Court case involving the issue of a cotenant’s consent to search a premises, Weston, 67 M.J. at 393 (citing Matlock, 415 U.S. 164, 94 S.Ct. 988), I do not believe that case to be controlling. Matlock was arrested on the front lawn of the house, Matlock, 415 U.S. at 166, 94 S.Ct. 988, and placed in a nearby police car. Id. at 179, 94 S.Ct. 988 (Douglas, J., dissenting). The arresting officers subsequently approached the house, spoke with a resident who shared a bedroom with Matlock, and received permission to search that bedroom. Id. at 166, 94 S.Ct. 988. The police did not ask Matlock for his consent to search the bedroom, nor did he offer it. Id. The Supreme Court recognized the consent of the cotenant may be valid against a eotenant who has not objected. Id. at 170, 94 S.Ct. 988; see also Rodriguez, 497 U.S. at 179-80, 186, 110 S.Ct. 2793 (holding cotenant’s consent to search valid where Rodriguez, who was asleep inside the house, was not asked for his consent if police reasonably believed the consenter possessed common authority over the premises).
This case differs from Matlock and Rodriguez in at least one critical aspect — neither Matlock nor Rodriguez were asked whether they would consent to a search. Here Weston unequivocally objected to a search of his premises. This distinction illustrates an important difference in this line of cases between “nonconsenting” cotenants and “objecting” cotenants.[3]
The Supreme Court noted in Randolph that “ ‘it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people.’ ” Randolph, 547 U.S. at 115, 126 S.Ct. 1515 (citations omitted). Given that special protection and the fact that Weston was detained by the police while his house was searched, I would find that the actions of law enforcement violated Weston’s Fourth Amendment rights. However, for the reasons set out in the Chief Judge’s separate opinion, I believe that the evidence would have been inevitably discovered and therefore I concur in the result.

. While I do not reach the issue as to whether an objection registered away from the home is vitiated by a subsequent consent by a cotenant, a compelling argument can be made that Randolph is based more on the stated positions of the cotenants rather than their physical proximity to the premises to be searched. The Randolph Court recognized two "complementary rules, one recognizing the cotenant’s permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.” Randolph, 547 U.S. at 121-22, 126 S.Ct. 1515. Here consent was sought from both cotenants at the police station at essentially the same time. The fellow occupants were both on hand. The police did not have to wonder whether Weston would consent because they asked him first for permission to search his home and he refused. Weston expressed his “contrary indication,” and there is a compelling argument that his objection should be accorded "dispositive weight." See id.

. In Matlock the Court referred to those coten-ants who had not been asked nor otherwise had informed law enforcement as to whether they consented or objected to the proposed search as "nonconsenting” cotenants. Matlock, 415 U.S. at 170, 94 S.Ct. 988. On the other hand, "objecting” cotenants refers to those cotenants who have voiced their objection to the search to law enforcement officers.: See Randolph, 547 U.S. at 121-22, 126 S.Ct. 1515; Murphy, 516 F.3d at 1124. The majority categorizes these distinct factual situations under the generic umbrella term "nonconsenting” and does not include Weston’s refusal to consent in its reasonableness analysis. Weston, 67 M.J. at 394 (stating "[a]s in Matlock, Appellant was a nonconsenting party”). While the majority contends that reasonableness is a "binary proposition” where "either there is consent or there is not,” Id. at 393, Randolph illustrates that is not always the case. The Supreme Court did not state that the factual situation in Randolph was the only situation where the objection of the defendant cotenant trumps another cotenant's consent. In my view, Weston’s unequivocal refusal is significantly distinct from cases where the defendant was not a party to the consent inquiry. Matlock and Weston are not similarly situated defendants.