

## NUMBERS 13-13-00665-CR & 13-13-00666-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

**v.**

MICHAEL ERIC RENDON,                                                    Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Garza, and Benavides
### Opinion by Justice Benavides

By four issues, which we consolidate into one, the State of Texas appeals the trial

court's orders granting appellee Michael Eric Rendon's motions to suppress.[1]   We

affirm.

---

[1] These cases have been consolidated for the purposes of this opinion on appeal.

## I. BACKGROUND

On May 8, 2012, Victoria, Texas police officers conducted a drug investigation at an apartment complex located on Bingham Street following a confidential informant's tip. The police's target suspect was Rendon, who was a resident of the apartment complex. Victoria Police Detective Jason Stover and his police-trained dog, Baco, assisted other officers in the investigation.

Detective Stover testified that Baco initially conducted a warrantless "open-air sniff" of the exterior of Rendon's parked vehicle, which was located in the apartment complex's parking lot. Following the sniff, Baco exhibited a "positive alert to the presence of narcotics." At that point, other Victoria police officers approached Rendon's apartment, but Rendon exited his apartment and greeted the officers before they were able to knock on his apartment door.[2]

The other officers spoke to Rendon outside of his apartment, and the officers later advised Detective Stover "by radio" to approach Rendon's residence with Baco. Detective Stover and Baco arrived at Rendon's apartment door, and Baco again conducted a warrantless sniff of the apartment's door and "alerted [Detective Stover] to the odor of illegal narcotics." After the positive alert, Detective Stover returned Baco to his police unit and joined the other officers outside of Rendon's apartment. Police officers then requested Rendon's consent to search his apartment, but Rendon declined. Detective Stover testified that because Rendon declined consent to search his

---

[2] The record establishes that the rectangular building holds four separate apartment units over two floors. The first two units are located on the ground floor, and the remaining two units are located on the second floor. A straight continuous staircase leads visitors and residents to the second floor. At the stairway's landing, the path splits left and right. Each second-floor apartment has a patio area immediately in front of its doorway. Rendon's apartment was located on the left side of the second floor.

apartment, he applied for a search warrant of Rendon's apartment and vehicle. In his search warrant application affidavit, Detective Stover noted Baco's "positive" alerts to the odor of narcotics from the "open-air sniff" outside of Rendon's vehicle, as well as after sniffing the "bottom left portion" of Rendon's apartment door. Detective Stover's application for the search warrant was granted by a magistrate and executed the same day.

The record is unclear as to what exactly was seized from Rendon's vehicle or apartment following the execution of the search warrant. However, in appellate cause number 13-13-00665-CR, a Victoria County grand jury indicted Rendon for possession of marijuana in an amount of five pounds or less but more than four ounces, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West, Westlaw through 2013 3d C.S.). In appellate cause number 13-13-00666-CR, the same grand jury indicted Rendon for money laundering, a state jail felony. *See* TEX. PENAL CODE ANN. § 34.02(e)(1) (West, Westlaw through 2013 3d C.S.).

After his arrest, Rendon was charged with possession of marijuana and money laundering and filed a motion to suppress in each respective case. Rendon sought to suppress, in relevant part, any and all evidence that was seized by the Victoria Police Department pursuant to the execution of Detective Stover's search warrant. Rendon attacked the warrant on Fourth and Fourteenth Amendment grounds, *see* U.S. CONST. amends IV, XIV, as well as under Article I, Sections 9, 10, and 19 of the Texas Constitution. *See* TEX. CONST. art. I, §§ 9, 10, 19. Specifically, Rendon asserted that Detective Stover's affidavit lacked probable cause to support the search and arrest. At the consolidated suppression hearing, Rendon's counsel argued that Baco's sniff of

Rendon's apartment door was an unconstitutional search under the Fourth Amendment, and thus, insufficient probable cause supported the warrant. The trial court agreed and granted Rendon's motions.

In its identical orders granting Rendon's motions to suppress, the trial court issued findings of fact and conclusions of law and found that Baco searched the "curtilage" of Rendon's apartment and that such a search was illegal under the Fourth Amendment, citing *Florida v. Jardines*, 133 S.Ct. 1409, 1417–18 (2013). The trial court further concluded that after excluding the tainted search from Detective Stover's affidavit, the remaining information did not establish probable cause to issue a warrant to search Rendon's apartment. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

## II. MOTION TO SUPPRESS

By one consolidated issue, the State asserts that the trial court erred by granting Rendon's motions to suppress.[3]

## A. Standard of Review

We review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by

---

[3] The State presented four issues for our review. For brevity, we will address each of the four issues under one analysis. *See* TEX. R. APP. P. 47.1. The State's original four issues were stated as follows:

(1) Is the standard of review in this case de novo?

(2) Is the passageway leading up to an apartment part of the common area of the apartment or part of the curtilage of the apartment?

(3) Did the trial court commit reversible error by finding that [Rendon] had met his burden to show that the search warrant against him was invalid?

(4) Did the State procedurally default by not asserting that the passageway from the stairway to [Rendon's] apartment was not part of the curtilage at the trial level?

4

the trial court and review de novo the trial court's application of the law to those facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We afford the same amount of deference to trial courts' rulings on application of law to fact questions, also known as "mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). He may carry this burden by establishing that the search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to prove the reasonableness of the search or seizure. *Id.*

## B. Discussion

We first examine whether Rendon carried his burden to rebut the presumption of proper police conduct. Rendon argues that the affidavit presented to the magistrate lacked probable cause because it was based on an unconstitutional sniff by Baco, and the remaining information in the affidavit was erroneous and insufficient to support a finding of probable cause.

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *McLain*, 337 S.W.3d at 272. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specific location. *Id.* When the trial court determines whether probable cause exists to support the

5

issuance of a search warrant, there are no credibility determinations; rather, the trial court is constrained to the four corners of the affidavit. *Id.* at 271. When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Id.*

An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests." *Id.* at 272. When reviewing the issuing magistrate's determination, we interpret the affidavit in a commonsensical and realistic manner, rather than a hypertechnical manner, recognizing that the magistrate may draw reasonable inferences. *Rodriguez v. State*, 232 S.W.3d 55, 59–61 (Tex. Crim. App. 2007).

### 1. Dog Sniff

Rendon first argues that the State lacked probable cause to obtain a search warrant because the basis for the warrant was an unconstitutional search by Detective Stover with Baco at Rendon's door. The United States Supreme Court recently addressed the constitutionality of the use of drug-sniffing dogs in *Florida v. Jardines*. 133 S.Ct. at 1414–18. In *Jardines*, the Court reiterated that "when 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred." *Id.* at 1414 (quoting *United States v. Jones*, 132 S.Ct. 945, 950–51 n.3 (2012)). The *Jardines* Court further noted that when it comes to the Fourth

6

Amendment, the home is "first among equals," because at the Amendment's "very core," stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Additionally, the United States Supreme Court has recognized that the "curtilage," or the area immediately surrounding and associated with the home, is "'part of the home itself for Fourth Amendment purposes.'" *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The Court noted that "[w]hile the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.'" *Id.* (quoting *Oliver*, 466 U.S. at 182, n.12). Utilizing these principles, the *Jardines* Court upheld the Florida Supreme Court's holding that the Miami-Dade Police Department's use of trained police dogs to investigate a home and its immediate surroundings was a "search" within the meaning of the Fourth Amendment that was unsupported by probable cause, rendering the warrant invalid. *See id.* at 1417–18; *see also Jardines v. State*, 73 So.3d 34, 55–56 (Fla. 2011).

We now turn to the facts of the present case. Detective Stover's testimony reveals that he used Baco to conduct a warrantless search of Rendon's apartment door at the request of other officers who were speaking to Rendon at the time outside of Rendon's apartment. Detective Stover provided no other reason to support the warrantless search. Rendon argues that this sniff search occurred in the curtilage of his apartment, and was, thus, unreasonable under *Jardines* and the Fourth Amendment. The State argues that because Baco's sniff occurred in the passageway leading up to

7

Rendon's apartment, it was a "common area" of the apartment complex and not protected by the Fourth Amendment.   We agree with Rendon.

According to Detective Stover's testimony and affidavit requesting a search warrant, Baco sniffed the "bottom left portion" of Rendon's apartment door and indicated the odor of narcotics "from within" Rendon's apartment.   However, facts from the record support Rendon's curtilage argument, including that (1) Rendon's apartment was the only apartment on the upper-left side of the building; (2) Rendon's neighbor, John Crook, who lives in the apartment on the upper-right side of the building, testified that he hangs plants along the railing in front of his apartment; and (3) Defendant's Exhibit 3, a photograph of Rendon's apartment building taken from the parking lot, depicts that Rendon's downstairs neighbor has chairs in the area immediately in front his apartment as well.   Logically, this means that at the time of Baco's sniff, Rendon's door was closed, and the sniff occurred immediately in front of the apartment's door.   Based on this record, we conclude that the area immediately in front of Rendon's apartment is no different from the front porch of a free-standing home.   Thus, bringing a trained police dog to sniff the bottom left portion of Rendon's apartment door in hopes of discovering incriminating evidence exceeded the scope of any express or implied license allowed under the Fourth Amendment.   *See Jardines*, 133 S.Ct. at 1416 (noting that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.").

The State misplaces its reliance on our sister court's holding in *Evans v. State*, 995 S.W.2d 284, 285–87 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) to support its "common area" argument.   We find *Evans* distinguishable and inapplicable.   In *Evans*,

the appellant sought to suppress evidence obtained from a search of her apartment on the basis that officers entered her apartment complex's common areas in an unauthorized manner. *Id.* at 286. The present case does not deal with the common areas of an apartment complex, as discussed in *Evans*, such as parking lots and sidewalks, but rather the curtilage of Rendon's apartment. Therefore, we hold that police conducted an unreasonable search by using a trained police dog to investigate the curtilage of Rendon's apartment. *See* U.S. CONST. IV; TEX. CONST. art. I, § 9; *see also Jardines*, 133 S.Ct. at 1417–18.

### 2. Residual Probable Cause

Despite our holding that police conducted an unreasonable search of Rendon's home and used the tainted search results to establish probable cause in order to obtain a search warrant, we must continue our inquiry and "put aside all tainted allegations" to determine whether the remaining independently acquired and lawful information stated in the affidavit clearly established probable cause. *See McClintock v. State*, ___ S.W.3d ___, No. PD–0925–13, at \*3 (Tex. Crim. App. Oct. 1, 2014) (recognizing the principle of "residual probable cause" as stated in *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005)).

In the remainder of his probable cause affidavit, Detective Stover stated that Victoria police officers conducted a drug investigation at Rendon's apartment complex on May 8, 2012. Detective Stover stated that in the parking lot of the complex, Baco conducted a sniff test upon a parked white Coors Lite Hartman Distributing Chevrolet HHR and a parked red four-door Cadillac. According to the affidavit, Baco displayed an

9

"extreme change in behavior and breathing" when he sniffed the Chevrolet vehicle, indicating a "positive alert to the odor of narcotics from within." Detective Stover also provided the following information in his affidavit:

> Prior to [the May 8, 2012] investigation, a confidential informant working under the direction [sic] purchased a large amount of cocaine from an individual whose supplier arrived from another location to the buy location. On the first purchase of cocaine, the supplier showed up in a red 4 door vehicle. The surveillance vehicle was too far away at this time to make out the model of the vehicle.

> During the second buy, a Hartman Distributing HHR showed up and supplied cocaine to the "middle man" who in turn was given the money for the cocaine by the confidential informant.

> A license plate was obtained off of the Harman Distributing [sic] by SCU personnel. Sgt. Jameson contacted the owner of Hartman Distributing and requested to know who had been driving the vehicle on this date. The owner advised that Michael Rendon had been driving the vehicle on the date of the confidential informant's purchase of cocaine.

> Surveillance was conducted on this location following this information being provided. At this time, SCU personnel learned that Michael Rendon also owned and operated a red 4 door Cadillac.

After reviewing the four corners of the affidavit "in a commonsensical and realistic manner," *see Rodriguez*, 232 S.W.3d at 59–61, and giving the appropriate deference to the magistrate, *see McLain*, 337 S.W.3d at 271, we cannot conclude that the remaining "independently acquired and lawful information stated in the affidavit" clearly establishes probable cause to search Rendon's apartment. After setting aside Baco's sniff of Rendon's apartment door, the remaining allegations contained in Detective Stover's affidavit focus on establishing Rendon's identity and his use of the Chevrolet vehicle to transport drugs. Nothing in the remainder of the affidavit establishes that under the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found inside of Rendon's apartment. *See id.* at 272. Therefore, we

10

conclude that the magistrate did not have a substantial basis for concluding that probable cause existed to search Rendon's apartment.

### 3. Summary

In sum, we conclude that Rendon met his burden to rebut proper police conduct. Under *Jardines*, Detective Stover conducted an unreasonable search of Rendon's home by entering the curtilage of Rendon's apartment and using a trained dog to sniff Rendon's door to find incriminating evidence. Furthermore, after "putting aside" the information derived from the dog sniff from the search warrant affidavit, we cannot conclude that the affidavit clearly established probable cause to search Rendon's apartment. Without probable cause, the search warrant was invalid. The State's sole issue on appeal is overruled.

### III. CONCLUSION

We affirm the trial court's orders granting Rendon's motions to suppress.

_____
GINA M. BENAVIDES,
Justice

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
4th day of December, 2014.