

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0013-15 & PD-0015-15

### THE STATE OF TEXAS

v.

### MICHAEL ERIC RENDON, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## VICTORIA COUNTY

ALCALA, J., delivered the opinion of the Court in which MEYERS, JOHNSON, RICHARDSON, and NEWELL, JJ., joined. RICHARDSON, J., filed a concurring opinion. YEARY, J., filed a dissenting opinion in which KELLER, P.J., KEASLER, and HERVEY, JJ., joined.

## O P I N I O N

In this case, we are asked to decide whether it constitutes a search within the meaning of the Fourth Amendment for law-enforcement officers to bring a trained drug-detection dog directly up to the front door of an apartment-home for the purpose of conducting a canine-narcotics sniff. We hold that it does. Consistent with the reasoning of the Supreme Court's

opinion in *Florida v. Jardines*,[1] we conclude that the officers' use of a dog sniff at the front door of the apartment-home of Michael Eric Rendon, appellee, resulted in a physical intrusion into the curtilage that exceeded the scope of any express or implied license, thereby constituting a warrantless search in violation of the Fourth Amendment. We, therefore, affirm the judgment of the court of appeals, which had affirmed the trial court's rulings granting appellee's motions to suppress. *See State v. Rendon*, Nos. 13-13-00665-CR, 13-13-00666-CR, 2014 WL 6881630 (Tex. App.—Corpus Christi Dec. 4, 2014).

## I. Background

In 2012, law-enforcement officers in Victoria were investigating appellee on suspicion of drug activity. One day, several officers, including Victoria Police Detective Stover and his trained drug-detection dog, Baco, went to the apartment complex where appellee lived. The apartment complex had four units, with two units upstairs and two units downstairs. Appellee lived in one of the upstairs units, which were accessible by a single staircase leading up to a landing. The landing was for the two upstairs units, with the door to each apartment on opposite ends of the landing. The stairs and landing had a metal fence that traversed the border, with the posts of the fence being multiple inches apart. Because the metal-fence posts were several inches apart, it would be possible to see the stairway and the door for each of the upstairs units even from the ground below.

When he first arrived, Detective Stover took Baco, his drug-detection dog, to the

---

[1]    133 S. Ct. 1409 (2013).

apartment complex's parking lot, where appellee's car was parked. Baco, who walked around the exterior of appellee's car, exhibited a positive alert to the smell of illegal narcotics. Detective Stover then walked Baco up the stairs to appellee's front door. Baco again alerted to the odor of illegal narcotics. Later that day, relying on the information obtained through the dog sniff, Detective Stover applied for a search warrant for appellee's vehicle and apartment. In his search-warrant affidavit, Detective Stover noted that Baco had alerted to the presence of an odor of illegal narcotics both on appellee's vehicle and on the "bottom left portion" of appellee's front door. Specifically, the affidavit stated,

> I deployed K-9 Baco on the front door of the residence. K-9 Baco displayed a change in behavior and breathing at the seem [sic] indicating the positive alert to the odor of illegal narcotics from within. K-9 Baco also indicated a final taught response to the odor of narcotics from within by sitting.

A judge signed the search warrant and officers executed it, seizing about two pounds of marijuana and $4,904 in cash, for which appellee was indicted for possession of marijuana and money laundering in two cause numbers.[2] Appellee filed a motion to suppress in each case. At the hearing on his motions, appellee asserted that the warrant to search his apartment was invalid on the basis that the information used to establish probable cause—Baco's positive alert to the presence of narcotics at his front door—had been obtained through an unlawful search in violation of the Fourth Amendment.

At the suppression hearing, Detective Stover testified consistently with his search-warrant's affidavit's description of the search as having occurred at the bottom left portion

---

[2] TEX. HEALTH & SAFETY CODE § 481.121; TEX. PENAL CODE § 34.02(e)(1).

of the front door by stating that he "deployed Canine Baco on the exterior of the apartment," and Baco "indicated a positive alert on the exterior of the door[.]" The trial court granted appellee's motions to suppress the evidence obtained from the search of his apartment. In its findings of fact and conclusions of law, the trial court found that appellee's apartment "was located on the 2nd floor of the apartment building and was the only apartment to the left of the stairs (another apartment was to the right of the stairs)." The court reasoned that, although the stairs leading to the second floor were a "public or common area," the landing to the left of the top of the stairs "led only and directly to defendant's door, [and] was therefore part of the 'curtilage' of defendant's apartment[.]" The trial court determined that Baco's alert on the front door of appellee's apartment constituted an intrusion into the "curtilage" and that such intrusion constituted an unlawful search in violation of the Fourth Amendment. After excluding the unlawfully obtained information, the trial court ruled that the remaining information in the search-warrant affidavit was inadequate to establish probable cause to support the issuance of the search warrant.

The State appealed. On appeal, the court of appeals upheld the trial court's rulings suppressing the evidence. *See Rendon*, 2014 WL 6881630, at *4. The court of appeals agreed with appellee's contention that Baco's "sniff search occurred in the curtilage of [appellee's] apartment, and was, thus, unreasonable under [*Florida v.*] *Jardines* and the Fourth Amendment." *Id*. at *3 (citing 133 S. Ct. 1409 (2013)). Thus, "bringing a trained police dog to sniff the bottom left portion of [appellee's] apartment door in hopes of

discovering incriminating evidence exceeded the scope of any express or implied license allowed under the Fourth Amendment." *Id.* at \*4 (citing *Jardines*, 133 S. Ct. at 1416). After setting aside the information derived from the unlawful dog sniff, the court upheld the trial court's determination that the remaining information in the search-warrant affidavit was inadequate to establish probable cause, and it held that the search warrant was invalid. *Id.* at \*5.

We granted the State's petition for discretionary review to determine whether the court of appeals correctly concluded that the area outside appellee's front door constituted the curtilage of his apartment.[3]

## II. The Physical-Intrusion Theory in *Jardines* Applies to this Case

Although our holding is more limited than the court of appeals's conclusion, we agree with the court of appeals that the reasoning of *Jardines* applies to this case. *See Jardines*, 133 S. Ct. at 1414-17. As we explain more fully below, we hold that the officers' conduct in bringing a trained drug-detection dog up to the threshold or area immediately outside of appellee's front door for the purpose of conducting a canine-narcotics sniff was an "unlicensed physical intrusion" onto the curtilage of his home that constituted a search in

---

[3]    The State's ground for review states,

The Court of Appeals['s] finding that the area outside of Appellee's apartment constituted the curtilage of that apartment incorrectly decided an important question of State and Federal law that has not been but should be settled by the Court of Criminal Appeals.

violation of the Fourth Amendment. *See id.* at 1415. Because the facts here show that the dog sniff occurred at the threshold of appellee's apartment-home and thus was clearly included within the physical-intrusion theory of *Jardines*, we need not reach the broader holding of the court of appeals that the portion of the landing to the left of the top of the stairs leading to appellee's door was the curtilage of his apartment and also subject to *Jardines*'s physical-intrusion theory. *See id.*; *Rendon*, 2014 WL 6881630, at \*4 (concluding that "the area immediately in front of Rendon's apartment is no different from the front porch of a free-standing home," and, therefore, bringing a trained drug-detection dog to that location exceeded the scope of any express or implied license and thus constituted a search for Fourth Amendment purposes).

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. In *Jardines*, the Supreme Court explained that this text "establishes a simple baseline." *Jardines*, 133 S. Ct. at 1414. Namely, the Court indicated that, when "'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Id.* (quoting *United States v. Jones*, 565 U.S.__, 132 S. Ct. 945, 950-51, n. 3 (2012)). In particular, with respect to the special constitutional protections that attach to the home, the Court observed that,

> when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own

home and there be free from unreasonable governmental intrusion." This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

*Id.* (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Applying these principles in *Jardines*, the Supreme Court considered whether it would constitute a search within the meaning of the Fourth Amendment for law-enforcement officers to use a drug-sniffing dog on the porch of a single-family residence to investigate the contents of the home. *Id*. at 1413. Comparing the physical intrusion into the curtilage of the home to the placement of a GPS receiver that had been physically mounted to a defendant's automobile, the *Jardines* Court applied the "traditional property-based understanding of the Fourth Amendment" to hold that the intrusion onto Jardines's porch was unauthorized. *See id*. at 1417 (citing *Jones*, 132 S. Ct. at 950). The *Jardines* Court discussed a physical intrusion that had occurred as a result of the entry by the officers and their drug-detection dog into the curtilage, which it defined as the area "'immediately surrounding and associated with the home'" that is considered to be a "'part of the home itself for Fourth Amendment purposes.'" *Id*. at 1414 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The *Jardines* Court stated,

The officers were gathering information in an area belonging to Jardines and immediately surrounding his house—in the curtilage of the house, which [the Supreme Court] ha[d] held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

*Id*. The Court further described the curtilage as the area around the home that is "'intimately linked to the home, both physically and psychologically,'" and is where "'privacy expectations are most heightened.'" *Id*. at 1415 (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). The Court discussed the fact that, although the boundaries of the curtilage are generally "'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.'" *Id*. (quoting *Oliver*, 466 U.S. at 182 n. 12). In *Jardines*, where the search occurred on the front porch of a private house, the Court easily resolved the matter of whether that area was included within the curtilage, stating that "there is no doubt that the officers entered [the curtilage]: The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" *Id*.

Having determined that the officers' investigation took place in a constitutionally protected area, the Court turned to the question of whether it was accomplished through an unlicensed physical intrusion. *Id*. Noting that physical entry onto the curtilage of a home is permitted by most residents under an implied-license theory, the Court explained that the kind of physical intrusion in *Jardines*—placing a dog with specialized skills on the person's porch for the purpose of detecting illicit drug activity—exceeded the scope of any express or implied license generally limited to knocking on a person's front door. *Id*. at 1416 (explaining that "[t]he scope of a license—express or implied—is limited not only to a particular area but also to a specific purpose. . . . Here, the background social norms that

invite a visitor to the front door do not invite him there to conduct a search."). The Court concluded that the fact that "the officers learned what they learned only by physically intruding on Jardines' property to gather evidence is enough to establish that a search occurred." *Id*. at 1417. Thus, the holding of *Jardines* was that, by physically intruding onto the front porch of a single-family dwelling with a specialized drug-detection dog for the express purpose of conducting a narcotics investigation, the officers exceeded the scope of their implied invitation that was limited to knocking on the front door. *Id*. at 1416-17.

The *Jardines* Court noted that "[o]ne virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy." *Id*. at 1417. Similarly, under these facts that show that the dog sniff occurred at the threshold of appellee's apartment-home, we conclude that application of the property-rights baseline renders the present case a straightforward one. Here, the officers took a drug-detection dog directly up to the threshold of appellee's front door, at which point the dog alerted to the presence of illegal narcotics on the bottom left portion of the door. This threshold at the door of an apartment-home located at an upstairs landing that served only two apartments is objectively "'intimately linked to the home, both physically and psychologically,'" and thus was part of the curtilage. *See id*. at 1415 (quoting *Ciraolo*, 476 U.S. at 213).[4]  The officers' presence at that location was for the express

---

[4]     *See also United States v. Dunn*, 480 U.S. 294, 301, 303 (1987) (explaining that the "centrally relevant consideration" in determining whether area constitutes curtilage is whether that area is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection"; primary focus is on whether the area is "so associated with the activities and privacies of domestic life" that it is deemed "part of" the home); *Oliver v. United States*, 466 U.S. 170, 182 n.12 (1984) (describing the "conception defining the curtilage . . . as the area around

purpose of conducting a search for illegal narcotics, which exceeded the scope of any express or implied license that is generally limited to knocking on someone's door. *Id.* at 1416-17. Under a strict application of the "traditional property-based understanding of the Fourth Amendment," we conclude that the dog sniff at the threshold of appellee's apartment's door was an unlawful search within the meaning of the Fourth Amendment. *Id.* at 1417 (citing *Jones*, 132 S. Ct. at 951-52); *see also United States v. Burston*, __F.3d__, 2015 WL 7454379, at *3-4 (8th Cir. Nov. 23, 2015) (in analogous situation, applying *Jardines* and concluding that use of drug-sniffing dog six to ten inches from apartment window constituted intrusion upon curtilage; that area was "immediately surrounding [the defendant's] residence," and thus, in the absence of any license to invade defendant's curtilage for that purpose, the "dog sniff was an illegal search" in violation of defendant's Fourth Amendment rights). We, therefore, narrowly hold that the curtilage extended to appellee's front-door threshold located in a semi-private upstairs landing and that the officers' conduct in bringing a trained narcotics-detection dog into that constitutionally protected area constituted an unlicensed physical intrusion in violation of the Fourth Amendment. *See Jardines*, 133 S. Ct. at 1417-18. We accordingly uphold the judgment of the court of appeals affirming the trial court's suppression order. *See Rendon*, 2014 WL 6881630, at *4.

As was the case in *Jardines*, given our conclusion that the officers physically intruded into the curtilage of appellee's home for the purpose of gathering evidence, we need not

the home to which the activity of home life extends").

decide whether the officers' conduct in this case also violated his expectation of privacy, which might be an alternative basis for upholding the judgment of the court of appeals. *See Jardines*, 133 S. Ct. at 1414, 1417 (citing *Katz v. United States*, 389 U.S. 347 (1967), and explaining that, given the officers' physical intrusion on a constitutionally protected area, the Court "need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz*"; "though *Katz* may add to the baseline, it does not subtract anything from the Amendment's protections when the Government *does* engage in [a] physical intrusion of a constitutionally protected area") (citations and quotation marks omitted). Furthermore, we do not reach the question whether the immediate area beyond the threshold of the door of an apartment-home, such as a private or semi-private landing or porch to an apartment may be considered part of the curtilage of the home, although we note that courts have determined that the "common areas" of an apartment complex are outside the curtilage. *See, e.g.*, *Evans v. State*, 995 S.W.2d 284, 286 (Tex. App.—Houston [14th Dist.] 1999) (distinguishing between defendant's apartment and the "common areas of the apartment complex," and observing that "[c]learly, the common areas [the defendant] complains of were not the curtilage of her apartment"); *United States v. Diehl*, 276 F.3d 32, 39 (1st Cir. 2002) (observing that, "[i]n a modern urban multifamily apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control") (citing *United States v. Arboleda*, 633 F.2d 985, 992 (2d Cir. 1980)). We leave these more difficult questions for another day.

### III. Conclusion

Applying the Supreme Court's reasoning in *Jardines* to the facts of this case, we conclude that, by bringing a drug-detection dog directly up to appellee's front door for the purpose of conducting a canine-narcotics sniff, the officers physically intruded upon the curtilage of appellee's home in a manner that exceeded the scope of any express or implied license, and any evidence obtained as a result of that trespass was obtained in violation of the Fourth Amendment. We, therefore, affirm the judgment of the court of appeals.

Delivered: December 16, 2015

Publish