

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0841-24

### STATE OF TEXAS

### v.

### COURTNEY JAMES-VARNELL ORGAN, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### WALLER COUNTY

NEWELL, J., delivered the opinion of the Court in which RICHARDSON, YEARY, KEEL, WALKER, MCCLURE and FINLEY, JJ., joined. PARKER, J., filed a concurring opinion. SCHENCK, P.J., filed a dissenting opinion.

### <u>OPINION</u>

Does the intrusion of a drug-detection dog's nose through the open window of a car during an open-air sniff violate the Fourth Amendment?  In

this case, Yes. The repeated intrusion of the dog's nose into a vehicle during an open-air sniff for narcotics amounted to a search under the Fourth Amendment without probable cause. Consequently, the trial court properly granted Appellee's motion to suppress evidence seized during the subsequent search of the vehicle based upon the dog's alert. Therefore, we affirm the judgment of the court of appeals upholding the trial court's order.

## Background

Waller County Trooper Kyle Cornell stopped Appellee's vehicle for speeding. The vehicle was registered out of Austin and occupied by two males. After initiating the stop, Trooper Cornell approached the passenger side window and asked the occupants to lower the window. As he approached, the driver, Appellee, lit a cigarillo and began smoking, which Trooper Cornell believed could be indicative of nervousness or an attempt to mask a smell inside of the vehicle. Trooper Cornell noticed the vehicle smelled like deteriorating food and saw multiple food containers inside of the otherwise clean vehicle. While he was "unable to tell" if there was an odor of marijuana, he believed that the "very, very slight" smell of marijuana was "a possibility" that could have been masked by the "overwhelming smell" of cigarillo smoke and food. Appellee and the passenger provided their driver's licenses. Given the occupant's nervousness, the car's smells, and the vehicle's travel from Austin to Houston, Trooper Cornell "kind of figured something was going on."

Trooper Cornell had Appellee exit the vehicle to continue his investigation.  Appellee appeared to be nervous, redirected from questions or failed to fully answer them, and seemed dishonest about his criminal history.[1]  Trooper Cornell called for backup.  Deputy Jason Kern arrived on scene with his K-9 partner, Jaks, a narcotics detection dog.  Trooper Cornell believed there were narcotics in the vehicle and requested consent to search from the passenger, the vehicle's registered owner.  The passenger denied consent to search.

Following the refusal, Deputy Kern conducted an open-air sniff with Jaks.[2]  As Deputy Kern led Jaks around the vehicle's exterior, he verbally instructed Jaks to "check here" several times and used his hand to direct Jaks's attention to the vehicle's trunk, back passenger door, and front passenger door.[3]  During the open-air sniff, as Jaks approached the front passenger door,

---

[1] The Trooper testified that Appellee's CCH showed that he had been arrested for assault on a public servant and the NCIC showed him to be a registered gang member.  When confronted with the fact of that arrest, Appellee stated all the charges had been dismissed.  Trooper Cornell testified that because of Appellee's criminal history, he had safety concerns.

[2] The open-air sniff was not a single action but multiple responses to the vehicle cued multiple times by the dog's handler.  The dog's handler cued the dog throughout the sniff including both verbally and physically instructing the dog to check at the passenger side door. The dog stuck his paws on the passenger side door and stuck his head through the window into the vehicle's interior in three separate instances.  We have posted the video of the event on the Court's website and it can be viewed here.  The website location is https://pbvideo.vids.io/videos/109bdeb21e1fe7c29a/pd-0841-24-organ-exhibit. As the video reveals, Jaks was repeatedly commanded, cued, and prompted by his handler.  Though his handler never explicitly prompted Jaks to stick his nose inside the car, we currently lack the ability to ascertain how the dog understood his handler's prompt to "check here."

[3] Deputy Kern testified that he and Jaks were a new team.  According to Deputy Kern, he had worked with Jaks for a total of approximately six months, including 8-9 weeks of canine training school, before switching dogs in September following an incident of biting during a training accident.  The stop we are considering occurred in April.

he jumped up at the passenger side window, leaned against the car with his front paws, and stuck his nose through the open window. Deputy Kern tried to lead Jaks to the front of the vehicle, but Jaks returned to the open window, put his front paws on the car, and stuck his face through the open window two more times. After the third time, Jaks sat down. Jaks's passive response, changes in his breathing pattern, and the "abnormality" of the dog continuing to put his feet upon the window and put his head by the window "to get bigger smells" indicated to Deputy Kern that Jaks was smelling one of the odors he was trained to identify.

Jaks was trained to identify odors of marijuana,[4] MDMA, cocaine, meth and heroin. Jaks was also trained to alert to residual odors, but he had not been conditioned against alerting to food. According to Deputy Kern, it was possible Jaks was responding to the food in the vehicle.[5] Based on Jaks's positive alert, police searched the vehicle and a large trash bag with pills believed to be Xanax was found under the driver's seat. The State charged

---

[4] There was also a good deal of testimony at the hearing on the motion to suppress concerning a distinction between hemp and marijuana and the dog's ability to differentiate between the two. This testimony is not recited herein because it is not relevant to the ultimate issue before this Court.

[5] Specifically, Deputy Kern, when asked whether the dog would have alerted because of the food, testified: "It's a possibility. These dogs are not perfect, and no person is perfect, but it's a possibility with some dogs. But the changes of behavior that I observed with that dog of him going back to the passenger's side window of the vehicle two and three times and sticking his head up by the window and getting huge whiffs or whatever was inside of the vehicle, those are -- those are not -- behavior like that is not conditioned. So, the dog took me to the open window several times before he was like, okay, and showed his -- his passive response."

Appellee with the first-degree felony of possession of 400 grams or more of Etizolam.[6]

Appellee filed several pretrial motions seeking to suppress the evidence seized. At a hearing on Appellee's motions, the trial court heard testimony from Trooper Cornell and Deputy Kern consistent with the facts above.[7] Additionally, the trial court admitted Trooper Cornell's dashcam video, Trooper Cornell's bodycam video, and Deputy Kern's bodycam video into evidence. Still frames from the dashcam video, which are relevant to the issue before the Court today, were admitted and show the following:



---

[6] Tex. Health & Safety Code § 481.117(e). Etizolam is similar to Xanax but has not been approved for medical use by the FDA. It is undisputed that Jaks was not trained to alert to Etizolam.

[7] In a bill of exception, the trial court also heard testimony from Daniel Mehler concerning the chemical composition of cannabis plants.





These frames, the State concedes, show three separate instances of Jaks jumping up on the passenger window and putting his face through the car's open window into the car's interior.[8] At the hearing, Appellee argued that the dog impermissibly entered the vehicle, and his alert did not provide probable

---

[8] State's Brief at pgs. 5-6 (citing State's Exhibit 1 at 28:28; 28:36; and 28:49).

cause to search the vehicle because Jaks was not well-trained and was possibly alerting to food or a legal hemp scent. The State responded that the dog did not enter the vehicle and that Jaks's alert did provide probable cause to search the vehicle.

The trial court denied Appellee's motion to suppress concluding that the totality of the circumstances provided reasonable suspicion for the officer to run the dog.[9] The trial court found the dog's alert provided probable cause. On the issue of whether the dog's nose impermissibly entered the car, the trial court found the video evidence spoke for itself but noted it was "not aware of any specific case that says that the dog's nose cannot break the plane of the window and where does that plane exist." With that, the trial court denied Appellee's motion to suppress the evidence and concluded the hearing.

Appellee filed a motion for the trial court to reconsider its ruling arguing that the dog's alert did not provide probable cause. Specifically, Appellee argued that the alert was obtained through an unconstitutional trespass into the vehicle's interior by the dog's nose. The State responded that Jaks did not trespass or illegally search the vehicle because the area he passed through was not enclosed.[10]

---

[9] The trial court found the following factors relevant to the reasonable suspicion analysis: Appellee's speeding, the slight odor of marijuana, the officer's experience with the masking of smells by food and smoke, the occupant's evasive answers concerning their travel and criminal history.

[10] Appellee also re-urged his argument that Jaks's alert was not reliable because he was not sufficiently trained. The State responded that Jaks was trained on five odors sufficient for him to be considered well-trained, and an odor of marijuana emanating from the car would establish probable cause to search the vehicle. However, no marijuana or hemp products

Upon reconsideration, the trial court granted Appellee's motion to suppress. The trial court made the following relevant findings of fact:

- There is a preponderance of credible evidence that at the time of the possible smell of marijuana, Trooper Cornell did have sufficient, articulable facts to establish a reasonable suspicion that there was contraband in [Appellee's] vehicle.

- It is uncontroverted that Jaks and Deputy Kern conducted an open air walk around of [sic] [Appellee's] vehicle.

- There is credible testimony establishing proof beyond a reasonable doubt that the nose of Jaks entered or intruded into the interior of [Appellee's] vehicle through the open passenger window.

- There is sufficient credible testimony establishing proof beyond a reasonable doubt that prior to Jaks' nose intruding into the interior of [Appellee's] vehicle, the dog had not alerted to the presence of contraband.

- There is sufficient credible testimony establishing proof beyond a reasonable doubt that immediately after Jaks' nose intruded into the interior of [Appellee's] vehicle, the dog alerted.

- There is some evidence that the dog may have alerted to the open food container (inside Appellee's vehicle at the time).

- It is uncontroverted that, based on the alert by Jaks, Trooper Cornell conducted a search of [Appellee's] vehicle (that the search of the vehicle was without a search warrant).

- It is uncontroverted that the only contraband found in [Appellee's] vehicle was etizolam.

- It is uncontroverted that Jaks had not been certified or trained on etizolam as a contraband substance.

The trial court made the following relevant conclusions of law:

___

were recovered from the vehicle. The only contraband found in the vehicle was Etizolam, which is not one of the substances Jaks had been trained to alert.

- [Appellee] . . . had a reasonable expectation of privacy against a trespass by law enforcement.

- The nose of Jaks entering [Appellee's] vehicle was a trespass.

- The trespass was for the purpose of obtaining information on contraband.

- Prior to the trespass Trooper Cornell did not have probable cause to conduct a search of [Appellee's] vehicle.

- When a police officer is not permitted to do an act, a dog acting on the officer's behalf is not permitted to do an act in lieu of the officer.

- The search without a warrant of [Appellee's] vehicle was illegal.

- The evidence of the illegal search, to wit: etizolam, should be suppressed.

## Appeal and Discretionary Review

On appeal, the State raised two points of error. First, the State argued that the trial court erred to find that Jaks illegally trespassed into Appellee's vehicle because the area through the open window was not enclosed.  The State argued that because the window was not closed upon the K-9 handler's approach, there was no expectation of privacy in the odors emanating from the car, which Jaks detected causing him to approach the window. Second, the State argued that the trial court erred to find that Jaks was not sufficiently trained to establish probable cause to search based on his alert to the smell of marijuana.  In response, Appellee argued that the court of appeals should defer to the trial court's findings because they are supported by the trial record.  Appellee argued that, while the Supreme Court has not directly

addressed the question, its holdings in *United States v. Jones*[11] and *Florida v. Jardines*,[12] support the conclusion that a drug-dog's trespass into the interior of a car is a search. It was only after this trespass that Jaks alerted and thus, Appellee argued the subsequent search was a fruit of the poisonous tree and the evidence seized must be suppressed.[13]

The court of appeals upheld the trial court's suppression of the evidence. It held, as a matter of first impression, that the dog's interior sniff of the vehicle was an unreasonable search in violation of the Fourth Amendment.[14] The court of appeals concluded that the trial court's finding that Jaks's nose entered or intruded into the interior of the vehicle was supported by the video and testimonial evidence.[15] And, applying the physical-intrusion theory from *Jones* and *Jardines*, the court concluded that Jaks physically occupied private property for the purpose of obtaining information by sticking his nose inside Appellee's car while performing an open-air sniff. This, according to the court

---

[11] *United States v. Jones*, 565 U.S. 400, 404 (2012) (holding the use of a GPS tracking device on a suspect's vehicle was a search for purposes of the Fourth Amendment).

[12] *Florida v. Jardines*, 569 U.S. 1, 5-6 (2013) (holding the use of drug-sniffing dog on the porch of a residence was a search within the meaning of the Fourth Amendment).

[13] Appellee argued, as to the State's second issue, that the trial court made no finding as to whether Jaks's alert was reliable, and the court of appeals need not reach the issue. Alternatively, Appellee maintained Jaks's alert was not reliable because he alerted to non-contraband. Finally, Appellee maintained that because the dog could not differentiate between hemp and marijuana, his alert was unreliable. Appellee concedes, however, that the reliability of Jaks's alert was not ripe for consideration.

[14] *State v. Organ*, 697 S.W.3d 916, 921 (Tex. App. – Houston [14th Dist.] 2024, pet. granted).

[15] *Id.* at 919.

of appeals, constituted "an unreasonable search in violation of the Fourth Amendment."[16]

The State filed a petition for discretionary review. In a single issue, the State asks: Does the intrusion of a drug-dog's nose through the open window of a car during a free-air sniff violate the Fourth Amendment or require exclusion of any evidence found? As we will explain in greater detail below, we conclude that Jaks's intrusion into Appellee's vehicle did violate the Fourth Amendment, and, under these facts, the decision to exclude the evidence that subsequently found by law enforcement was within the trial court's discretion.

## Standard of Review

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion applying a bifurcated standard of review.[17] At a suppression hearing, the trial judge is the sole factfinder and judge of the credibility of witnesses and the weight to be given to their testimony.[18] We afford a trial court's determination of historical facts almost complete deference.[19] Likewise, we give the same deference to a trial court's determinations of mixed questions of law and fact when those questions depend on an

---

[16] *Id.* at 921.

[17] *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

[18] *Lerma*, 543 S.W.3d at 190.

[19] *Id.*

evaluation of credibility and demeanor.[20]  However, we review questions of law and mixed questions of law and fact that do not turn on an assessment of credibility and demeanor *de novo*.[21] Ultimately, the question of whether a specific search or seizure is "reasonable" under the Fourth Amendment is subject to *de novo* review.[22]  We will uphold a trial court's ruling if it is correct under any applicable theory of law.[23]

## **The Fourth Amendment: Property v. Privacy**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[24] The Supreme Court has said that "[t]he text of the Fourth Amendment reflects its close connection to property" by its reference to the right to be secure against unreasonable search and seizures in specifically enumerated areas: "persons, houses, papers, and effects."[25] Thus, the Court has recognized that "for most of our history the Fourth Amendment was understood to embody a particular

---

[20] *Crain*, 315 S.W.3d at 48.

[21] *Id.*; *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

[22] *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (recognizing that the court views the trial court's factual findings in the light most favorable to its ruling but decides the issue of "reasonableness" as "a question of Fourth Amendment law under Supreme Court precedent").

[23] *Lerma*, 543 S.W.3d at 190.

[24] U.S. CONST. amend. IV.

[25] *Jones*, 565 U.S. at 405 (reasoning the phrase "in their persons, houses, papers, and effects" would have been superfluous absent a close connection to property rights).

concern for government trespass upon the areas ("persons, houses, paper, and effects") it enumerates."[26] This is consistent with English common-law's understanding that the "law holds the property of every man so sacred, that no man can set foot upon his neighbour's close without his leave; if he does he is a trespasser, though he does no damage at all; if he will tread upon his neighbour's ground, he must justify if by law."[27]  Applying this property-based understanding, the Supreme Court has held that when the Government physically occupies private property for the purpose of obtaining information, a Fourth Amendment search has occurred.[28]

This property-based trespassory test has been applied to trespasses into vehicles. "It is beyond dispute that a vehicle is an 'effect'" protected by the Fourth Amendment.[29]  In *United States v. Jones*, the Supreme Court held that the attachment of a GPS-tracking device on the undercarriage of a suspect's vehicle used to track that vehicle's movements was a search within the meaning of the Fourth Amendment.[30]  The Court reasoned that "[t]he

---

[26] *Id.* at 406.

[27] *Id*. at 405 (citing *Entick v. Carrington*, 95 Eng. Rep. 807 (C.P. 1765)); *see also Boyd v. United States*, 116 U.S. 616, 626-27 (1886) (recognizing *Entick* as "the true and ultimate expression of constitutional law" that "it may be confidently asserted that its propositions were in the minds of those who framed the fourth amendment to the constitution, and were considered as sufficiently explanatory of what was meant by unreasonable searches and seizures).

[28] *Id.* at 404.

[29] *Id*.

[30] *Id*. at 404-05.

Government physically occupied private property for the purpose of obtaining information" and had "no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted."[31]  The physical intrusion by law enforcement on to the vehicle to obtain information presented "a classic trespassory search."[32]  And the Court reasoned that by applying "an 18th-century guarantee against unreasonable searches" it was providing the "degree of protection [the Fourth Amendment] afforded when it was adopted."[33]  But a property-based trespass is not the exclusive test of whether there was a Fourth Amendment search.[34]

In the latter half of the 20th century, the Supreme Court's Fourth Amendment cases deviated from the common-law property-based approach and considered instead whether a person's reasonable expectation of privacy had been violated.[35]  In *Katz v. United States*, the Supreme Court stated "the Fourth Amendment protects people, not places" when considering whether the Government's surveillance and recording of a telephone line in a public telephone booth, a location outside of the Fourth Amendment's enumerated areas of protection, violated the Fourth Amendment.[36]  The Court noted that

---

[31] *Id*.

[32] *Id.* at 412.

[33] *Id.* at 411.

[34] *Id.*

[35] *Id.* at 405-406 (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)).

[36] *Katz*, 389 U.S. at 349-51.

the parties in *Katz* formulated property-based arguments around the question of whether the telephone booth itself was a constitutionally protected area.[37]

But the Court instead viewed the inquiry as one concerning privacy, reasoning that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection . . . [b]ut what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."[38]  In the context of the telephone booth surveillance, the Court held that the Government's listening to and recording Katz's phone calls constituted a search and seizure under the Fourth Amendment because it "violated the privacy upon which he justifiably relied while using the telephone booth[.]"[39]  This was a departure from the narrow view that surveillance without a trespass or seizure fell outside of the Fourth Amendment.[40]  In his concurring opinion, Justice Harlan summed up the Court's analysis in *Katz* writing that "a person has a constitutionally protected reasonable expectation of privacy" that may be violated by electronic as well as physical invasion.[41]

---

[37] *Id.* at 351.

[38] *Id.* (internal citations omitted).

[39] *Id.* at 353.

[40] *Id.* ("Indeed, we have expressly held that the Fourth Amendment governs not only the seizure of tangible items but extends as well to the recording of oral statements overheard without any 'technical trespass under * * * local property law.'") (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

[41] *Id.* at 362 (Harlan, J., concurring).

The reasonable-expectation-of-privacy test applied in *Katz* "has been *added to*, not *substituted for*, the common-law trespassory test."[42] "*Katz* did not narrow the Fourth Amendment's scope."[43] Rather, it supplements the understanding of the protections offered by the Fourth Amendment. The Fourth Amendment thus protects the enumerated areas as well as those places where a person has a reasonable expectation of privacy.[44] The Supreme Court was careful to explain in *Jones* that neither the trespass test nor the reasonable-expectation-of-privacy test is the exclusive test used to determine whether there was a Fourth Amendment search.[45] While *Katz* established that "property rights are not the sole measure of Fourth Amendment violations" it remains "that, when the Government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth

---

[42] *Jones*, 565 U.S. at 408 (emphasis in the original).

[43] *Id.* at 407-08 ("As explained, for most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ("persons, houses, papers, and effects") it enumerates. *Katz* did not repudiate that understanding.").

[44] *Id.* at 408 ("*Katz* did not erode the principle 'that, when the Government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment'") (citing *United States v. Knotts*, 460 U.S. 276, 286 (1983) (Brennan, J., concurring)).

[45] *Id.* at 411. This makes sense because, as the Supreme Court explained, the reasonable expectation of privacy is "an expectation 'that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id.* at 408 (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

Amendment."[46] Two Supreme Court cases concerning the use of drug-sniffing dogs illustrate this point.

First, in *Illinois v. Caballes*, the Court held a drug-detection dog's open-air sniff around the exterior of a vehicle during a lawful traffic stop is not a Fourth Amendment search.[47] The Court considered whether the dog sniff infringed upon any constitutionally protected interest and stated that "official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment."[48] The Court reasoned that an open-air sniff by a well-trained narcotics-detection dog "discloses only the presence or absence of narcotics, a contraband item," for which there is no legitimate privacy interest.[49] Thus, "the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view'—during a lawful traffic stop, generally does not implicate legitimate privacy interests."[50] In that case, the Supreme Court had no occasion to consider a physical intrusion on to property because

---

[46] *Id.* at 407 (citing *Soldad v. Cook County*, 506 U.S. 56, 64 (1992) and *Knotts*, 460 U.S. at 286 (1983) (Brennan, J., concurring)).

[47] *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

[48] *Id.* at 408.

[49] *Id.* at 408-409.

[50] *Id.* at 409 (internal citation omitted). Indeed, the Supreme Court's view of "well-trained" seems to contemplate that a well-trained drug-sniffing dog would be trained against alerting to food. As mentioned above, Jaks was not trained against alerting to food.

the open-air sniff was performed by walking the dog around the exterior of the defendant's vehicle on a public road.

Later, in *Florida v. Jardines*, the Supreme Court considered whether the use of a drug-sniffing dog on the front porch of a residence constituted a Fourth Amendment search.[51]  The defendant in *Jardines* was suspected of growing marijuana in her home.[52]  Law enforcement sent a surveillance team to the residence, but officers observed nothing.[53]  Detectives later approached the residence with a drug-sniffing dog.[54]  As the dog approached the front porch, the dog began exhibiting signs that it was tracking an odor.[55]  The dog sniffed the base of the front door and then sat, which was the trained behavior for alerting to the odor's strongest point.[56]  A search warrant was obtained based on the dog's alert.[57]  The Supreme Court granted certiorari to determine whether the officer's actions constituted a search within the meaning of the Fourth Amendment.[58]

---

[51] *Jardines*, 569 U.S. at 5.

[52] *Id.* at 3.

[53] *Id.*

[54] *Id.* at 3-4.

[55] *Id.* at 4.

[56] *Id.*

[57] *Id.*

[58] *Id.*

The Supreme Court, reaffirming the physical-intrusion theory applied in *Jones*, held that the Government's use of trained police dogs to investigate a residence and its immediate surroundings constitutes a Fourth Amendment search.[59] The home and its curtilage, including the front porch, are constitutionally protected areas.[60] The officers gathered information by physically entering and occupying an area that belonged to Jardines.[61] While an officer need not shield his eyes when passing by homes through public thoroughfares, "an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendment's protected areas."[62] Thus, while an officer, just like any citizen, may approach a residence and knock on the front door without a warrant, the Court recognized that taking a trained narcotics-detection dog to explore the area for the purpose of discovering incriminating evidence "is something else."[63] The objective purpose in that instance is to obtain information via the dog's contraband detection ability. While a person may not have a reasonable

---

[59] *Id.* at 5-6; *see also State v. Rendon*, 477 S.W.3d 805, 811 (Tex. Crim. App. 2015) (applying *Jardines* and concluding bringing a drug-dog up to a front door for the purpose of conducting a canine-narcotics sniff was a search in violation of the Fourth Amendment).

[60] *Id.* at 6-7.

[61] *Id.* at 6.

[62] *Id.* at 7.

[63] *Id.* at 8-9.

expectation of privacy in contraband, a person may still have a constitutionally protected property interest in the area where contraband is found.[64]

In response to the State's argument in *Jardines* that an investigation by a narcotics-detection dog, by definition, cannot implicate any legitimate privacy interest, the Court explained it did not need to consider whether there was an expectation-of-privacy violation because it was sufficient "[t]hat the officers learned what they learned only by physically intruding on Jardines' property to gather evidence" to determine that a search occurred.[65] Likewise, in response to the State's argument that forensic dogs have been commonly used for centuries, the Court noted when the government physically intrudes to gather evidence, the antiquity of the tools – in this case a drug-sniffing dog, is irrelevant.[66] In *Jardines*, the Court held there was a Fourth Amendment search because there was an unlicensed physical intrusion into a constitutionally protected area so the Court did not need to consider the test applied in *Katz.*[67]

---

[64] *Id.* at 11 ("Thus, we need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz.*").

[65] *Id.* ("The *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*," the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas.").

[66] *Id.*

[67] *Id.* at 11 ("One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy. That the officers learned what they learned only by physically intruding on Jardines' property to gather evidence is enough to establish that a search occurred.").

This Court has also applied the physical-intrusion theory in *Jardines* to hold that taking a drug-detection dog to sniff the exterior of an apartment home's front door was an unlawful search.[68]   In *State v. Rendon*, law enforcement was investigating the defendant on suspicion of drug activity and took a drug-detection dog to the front door of his apartment on a semi-private upstairs landing.[69] The dog gave a positive, which was used to establish probable cause for a search warrant for the apartment.[70] Considering *Jardines* and applying Fourth Amendment's "property-rights baseline," this Court held that taking the trained narcotics-detection dog to the constitutionally protected area of the home's curtilage was for the express purpose of conducting an open-air sniff, a Fourth Amendment search.[71]   The Court held any evidence obtained as a result of this trespass should be suppressed.[72]

With these Fourth Amendment principles in mind, we turn to the case before us.   This case is easily resolved by applying the physical-intrusion principles laid out in *Jones* and *Jardines*.   Because law enforcement physically intruded into a constitutionally protected area to obtain information, we hold there was a Fourth Amendment search.

---

[68] *Rendon*, 477 S.W.3d 805, 810 (Tex. Crim. App. 2015).

[69] *Id.* at 806-807.

[70] *Id.*

[71] *Id.* at 810.

[72] *Id.*

**Analysis**

It was established in *Caballes* that the routine open-air sniff procedure of walking a drug-detection dog around the exterior of a lawfully seized vehicle raises no constitutional privacy concern. But the instant case differs from *Caballes* because here the dog's nose entered the vehicle's interior several times through the open passenger side window during the open-air sniff.[73] The trial court's finding that Jaks's nose intruded into the interior of the vehicle is supported by video and testimonial evidence, and it is undisputed that the dog's nose entered the vehicle interior before police had probable cause to enter the vehicle.[74]   Thus, we are considering whether the intrusion of the dog's nose into the vehicle's interior amounted to a constitutional violation. We conclude it does.

As the court of appeals recognized, applying the physical-intrusion principles set out in *Jones*, and applied in *Jardines*, makes the case at bar "a straightforward one."[75] "It is beyond dispute that a vehicle is an 'effect'" meaning an enumerated area protected by the Fourth Amendment.[76] "[W]hen the Government obtained information by physically intruding on . . . effects, a search within the original meaning of the Fourth Amendment has

---

[73] *Organ*, 697 S.W.3d at 919.

[74] *Id.*

[75] *Organ*, 697 S.W.3d at 921 (citing *Jardines*, 569 U.S. at 5).

[76] *Jones*, 565 U.S. at 404.

undoubtedly occurred."[77]   The placement of a GPS device onto a vehicle to gather information, e.g, the vehicle's movements, was a physical intrusion in *Jones*.[78]  A drug-detection dog entering and occupying the front porch area of a home was a trespassory intrusion onto a protected area, the home's curtilage, in *Jardines*.[79]   The Court recognized in *Jardines* that the use of trained drug-dogs to investigate an area reveals an objective purpose to search or gather incriminating evidence.[80]   It follows that a drug-detection dog entering the interior of a vehicle during an open-air sniff for narcotics is a physical intrusion into a constitutionally protected effect the purpose of which is to search for incriminating scent evidence.[81]

This is consistent with our recognition that an officer is not permitted to lean into the interior of a vehicle without probable cause.[82]   In *Smith v. State*, an officer approached several men in a parking lot when one of them sat down on the front seat of an automobile and appeared to put something under seat.[83]   The officer was suspicious and, ultimately, he leaned into the vehicle

---

[77] *Jardines*, 569 U.S. at 5 (citing *Jones*, 565 U.S. at 406, n. 3).

[78] *Jones*, 565 U.S. at 404-05.

[79] *Jardines*, 569 U.S. at 6.

[80] *Id.* at 9-10.

[81] This conclusion is supported by Deputy Kern's testimony that the dog was "sticking his head up by the window and getting huge whiffs of whatever was inside of the vehicle."

[82] *Smith v. State*, 542 S.W.2d 420, 421 (Tex. Crim. App. 1976).

[83] *Id.* at 421.

and looked under the front seat where he found marijuana.[84] The Court concluded this was an impermissible search without probable cause and held the evidence should be excluded.[85] The State concedes an officer sticking his head inside of a car intrudes into a protected area but argues that a dog is unable to relay information back to the police. We disagree. The dog's purpose is to discover incriminating evidence, namely, the scent of narcotics it is trained to detect. That identification of such a scent is relayed to the police by way of the conditioned responsive behavior, which is why such alerts provide probable cause to search.[86]

A drug-sniffing dog is a tool of law enforcement.[87] And the purpose of using this tool is obtaining information through the dog's odor detection abilities.[88] Here, law enforcement obtained information by way of the dog's

---

[84] *Id.*

[85] *Id.* at 422.

[86] *State v. Weaver*, 349 S.W.3d 521, 527-28 (Tex. Crim. App. 2011) ("it is generally accepted that a positive alert by a certified drug-dog is usually enough, by itself, to give officers probable cause to search").

[87] *Jardines*, 569 U.S. at 12-13 (Kagan, J., concurring) ("As this Court discussed earlier this Term, drug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners.") (citing *Florida v. Harris*, 568 U.S. 237, 240 (2013)).

[88] *Id.* at 8-9 (recognizing that "the introduction of trained police dogs to explore an area in hopes of discovering incriminating evidence" is unlike the customary norm of allowing visitors to one's front door and determining that the officer's behavior "objectively reveals a purpose of conduct a search"). Here, Trooper Cornell testified that he believed there were narcotics in the vehicle and, after consent to search was denied, he requested the canine officer run his dog. There can be little doubt this open-air sniff was done for the purpose of obtaining information.

entry into the vehicle. Because the government obtained information by physically intruding into Appellee's vehicle, a search "undoubtedly occurred."[89]

## Counter Arguments

The State argues that no search occurred under either a property-based or a privacy-based theory. The State also argues there was no trespass because the dog's intrusion through the open car window's boundary is not a "breaking of the close," or a common law trespass to chattel, and the dog's mere touching of the car is not sufficient without harm or damages. In essence, the State argues, in several different iterations, that there was not a sufficient trespass recognized in common-law to warrant concluding that there was a property-based intrusion. Next, the State argues that because the dog's intrusion was an instinctive impulse, it was not done for the purpose of obtaining information, and the conduct should not be attributed to law enforcement absent some other misconduct or harm. The State notes that there is no reasonable expectation of privacy in contraband and argues that under either theory the nose intrusion was not unreasonable. Finally, the State argues that even if an unreasonable search occurred, it should not result in the exclusion of the evidence seized. We are not persuaded by these arguments and take each in turn to explain why.

---

[89] *Jones*, 565 U.S. at 406, n. 3 ("Whatever new methods of investigation may be devised, our task, *at a minimum*, is to decide whether the action in question would have constituted a "search" within the original meaning of the Fourth Amendment. Where, as here, the Government obtains information by physically intruding on a constitutionally protected area, such a search has undoubtedly occurred.").

## An actionable common-law trespass
## cause of action is not required

The State argues that there was not a physical-intrusion pursuant to *Jones* because there was not a common-law "breaking-of-the-close" under trespass law. At common law, the State asserts, a trespass across an invisible boundary into a property's airspace, could be prosecuted.[90] But this type of action was not applicable to chattel such as a vehicle. Rather, a trespass to personal property required a touching, which Appellee did not complain of at trial, or damage, which did not occur. The State asks us to conclude there was no physical intrusion because there was not a prosecutable trespass to land or an otherwise tortious trespass to chattel. But, as the Supreme Court recognized in *Jones*, the existence of an exact 18th-century analog is not required.[91] Rather, the task is to determine whether the government physically intruded on a constitutionally protected area for the purpose of obtaining information.[92] If so, a search has occurred because, at a minimum, there was an 18th century guarantee of protection against such a search.[93]

---

[90] *See* Dobbs, D., The Law of Torts, § 5.2 n. 13 (West 2016) ("Early common law envisioned the plaintiff's land as an enclosed parcel and required an entry that 'broke the close.'").

[91] *Jones*, 565 U.S. at 406 n. 3. (responding Justice Alito's concurring argument that "it is almost impossible to think of late–18th—century situations that are analogous" to the placement of a GPS-tracking device on a vehicle, the Court said it was "quite irrelevant whether there was an 18th-century analog" to an investigatory technique).

[92] *Id.* at 404-05.

[93] *Id.* at 406 n. 3.

As discussed above, a vehicle is an effect protected by the Fourth Amendment.[94] There was an entry into the vehicle's interior, which is a physical intrusion into a protected area, even if a common-law, breaking-of-the-close trespass action only applied to land. Long ago, the Supreme Court recognized that the Fourth Amendment's guarantees do "not turn upon the technicality of a trespass," because "[i]nherent Fourth Amendment rights are not inevitably measurable in terms of ancient niceties of tort or real property law."[95] Rather, such rights are "based upon the reality of an actual intrusion into a constitutionally protected area."[96] Because the physical intrusion into a protected area was for the purpose of obtaining information, there was a search.

This is consistent with the Supreme Court's holding in *Kyllo v. United States*, that the use of a thermal imaging device, to detect whether heat consistent with the use of marijuana grow lamps was present inside of a residence, was a physical intrusion "search."[97] A drug-detection dog, like a thermal imaging device, is a sense-detection tool. And, in *Kyllo,* the Supreme Court concluded that "obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have

---

[94] *Jones*, 565 U.S. at 404.

[95] *Silverman v. United States*, 365 U.S. 505, 511-12 (1961).

[96] *Id.* at 512.

[97] *Kyllo v. United States*, 533 U.S. 27, 40 (2001).

been obtained without physical 'intrusion into a constitutionally protected area' constitutes a search—at least where (as here) the technology in question is not in general public use."[98]  Furthermore, we have already recognized that an officer leaning into a car and looking under the front seat was a search conducted in violation of the Fourth Amendment.[99]  If an officer cannot lean through a car's open window to search the interior of the car without violating the Fourth Amendment (as the State concedes), the officer cannot use a tool to do so either.

For the same reasons, we reject the State's argument that, because there was no common-law, trespass-to-goods, no search occurred.  That Jaks's nose did not dispossess the vehicle from its owner is not germane.  The State concedes we need not determine whether Jaks's touching of the vehicle itself suffices as a trespass either.[100]  But if we were to accept the State's argument that there was no intrusion here because Jaks did not dispossess, damage, or touch the vehicle, officers would be permitted to lean in through

---

[98] *Id.* The Court in *Jardines* recognized that the ordinary person would find it "'a cause for great alarm' to find a stranger snooping about his front porch *with or without* a dog." *Jardines*, 569 U.S. at 8-9, n. 2 & 3.  We think it analogous to say that the general public would find it a great alarm for a trained drug-detection dog to enter its vehicles.

[99] *Smith*, 542 S.W.2d at 421.

[100] The State argues that because the trial court and court of appeals focused on Jaks's nose intruding through the open window as the basis for the Fourth Amendment violation, we need not consider whether Jaks repeatedly jumping up on the car or possibly setting a paw just inside the vehicle's interior was a Fourth Amendment violation.  We agree this is not relevant because Jaks's intrusion through the window into the vehicle's interior for the purpose of obtaining information is sufficient to establish a Fourth Amendment search.

open car windows to investigate whatever they could see or smell from that purview without the same being considered a "search."[101]  Again, as the State concedes, an officer would not be permitted to do so, and we reject the State's argument that the situations are not analogous because trained drug-detection dogs do not relay information.

### We need not determine whether Appellee had a reasonable expectation of privacy

The State next argues that Jaks's intrusion was not a search, pursuant to *Katz*'s reasonable-expectation-of-privacy test, because Appellee had no reasonable expectation of privacy in contraband.[102]  But *Katz*'s reasonable-expectation-of-privacy test was "*added to*, not *substituted* for the property-based understanding of the Fourth Amendment, and so it is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas."[103]  Thus, in *Jardines* it was not necessary to decide whether taking a drug-dog onto a home's front porch violated the

---

[101] But *see New York v. Class*, 475 U.S. 106, 114-15 (1986) (holding that an officer's reaching into a car's interior was a "search"); *Smith*, 542 S.W.2d at 422 (officer leaning inside an open car door and looking under the front seat was a search).  The State concedes that a dog sticking its head inside a car intrudes into an area regarded as having privacy protections that would constitute a privacy violation if an officer did it.

[102] *Katz*, 389 U.S. at 360.

[103] *Jardines*, 569 U.S. at 11 (citing *Jones*, 565 U.S. at 409).

defendant's reasonable expectation of privacy under *Katz*.[104]  So, we need not

consider whether Appellee's reasonable expectation of privacy was violated.[105]

### A drug-detection dog is a tool of law enforcement used to obtain information

The State also argues that the intrusion was instinctive impulse, not

encouraged or facilitated by an officer, and thus, not done for the purpose of

obtaining information.  The State concedes the open-air sniff was done for the

purpose of obtaining information but argues that the physical intrusion was

not essential to the performance of the open-air sniff and was not obtained

through misconduct such as the officer's encouragement and thus, should not

be considered a search.  The State is attempting to draw too fine a line the

result of which would be unworkable.  The existence of a Fourth Amendment

violation cannot turn on the state of mind of the drug-sniffing dog.

The dog's intrusion into the vehicle's interior occurred during the open-

air sniff for narcotics, which was done to obtain information. And the record

---

[104] *Id.* We reached the same conclusion in *Rendon*. *Rendon*, 477 S.W.3d at 811 ("As was the case in *Jardines*, given our conclusion that the officers physically intruded into the curtilage of appellee's home for the purpose of gathering evidence, we need not decide whether the officer's conduct in this case also violated his expectation of privacy, which might be an alternative basis for upholding the judgment of the court of appeals.").

[105] However, it is worth noting that a driver generally has a reasonable expectation of privacy in a vehicle he is driving. *See Class*, 475 U.S. at 114 ("While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police"); *see also Matthews v. State*, 431 S.W.3d 596, 607 (Tex. Crim. App. 2014) (recognizing that a person driving a borrowed car generally has a reasonable expectation of privacy in that vehicle); *Jones*, 565 U.S. at 404, n. 2 (recognizing that if Jones was not the owner, he had at least the property rights of a bailee). While the vehicle was registered to the passenger, Appellee as the driver had a reasonable expectation of privacy in the vehicle.

supports the trial court's finding that it was not until immediately *after* the intrusion into the vehicle that Jaks gave a positive alert.[106]  Deputy Kern testified that Jaks's act of returning to the window and putting his paws on the car to stick his nose inside was an abnormality and not a conditioned response.  But he also testified that it was not until after the dog stuck his head through the window, getting "huge whiffs of whatever was inside of the vehicle," that the dog showed his final passive response.  Furthermore, the State disregards the fact that the officer instructed Jaks, by knocking on the passenger side door and verbally commanding him to "check," to sniff the area.[107]  Under these circumstances, we decline the State's invitation to dissect the intrusion from the open-air sniff and hold that this discrete part of the interaction was not done for the purpose of obtaining information.  The intrusion into the protected area occurred during the open-air sniff, which was done to obtain information, and law enforcement used the information obtained immediately thereafter to establish probable cause to search the vehicle.

Moreover, the cases relied upon by the State do not support its arguments. First, the State cites *United States v. Keller* to support the

---

[106] Perhaps the result would be different if the dog completed an exterior open-air sniff around the vehicle, gave a positive alert through a conditioned responsive behavior, and then intruded physically into the car.  But these are not the facts before us today.

[107] We are not suggesting that the officer acted improperly by leading Jaks around the vehicle, but we highlight the instruction to illustrate the difficulty with determining which specific behaviors during an open-air sniff are instinctive rather than investigatory.

contention that Jaks's conduct was merely impulsive and incidental absent police misconduct.[108]  In *Keller*, the Fifth Circuit held it was not plain error for the district court to conclude that a drug-dog's placing his paws on Keller's vehicle in the primary inspection lane at an immigration checkpoint was not a Fourth Amendment search.[109]  The court reasoned that "absent police misconduct" the dog's "instinctive actions" of placing his paws on the vehicle's exterior was a "mere touching" and not an unconstitutional Fourth Amendment search.[110]  The Fifth Circuit compared the dog's behavior to an officer leaning on the door of a car.[111]

But *Keller* is factually distinguishable because the intrusion at issue here was not a mere touching of the vehicle's exterior.  Jaks's nose intruded into the interior of the car.  Additionally, the federal cases cited by the State do not support its position that police misconduct is required or that the dog's conduct was not for the purpose of obtaining information.  For example, in *United States v. Guidry*, a drug-sniffing dog alerted prior to the dog's head entering the car and thus, officers already had probable cause to search the interior.[112]  Furthermore, *Guidry* and the other cases cited by the State pre-

---

[108] *United States v. Keller*, 123 F.4th 264, 268 (5th Cir. 2004).

[109] *Id.* at 268.

[110] *Id.*

[111] *Id.*

[112] *United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016) (recognizing that "as the point that [the drug-dog's] head supposedly entered Guidry's car, the officer had probable cause

date or fail to consider the principles laid out in *Jardines* and *Jones.*[113]   But these Fourth Amendment principles are clear; a search has occurred when the government physically intrudes on a constitutionally protected area for the purpose of obtaining information.[114] While property rights are not the sole measure of Fourth Amendment violations, they provide the straightforward baseline.[115]

### The trial court properly excluded the evidence seized

Finally, the State argues that even if there was a search under a property or privacy theory, the search was reasonable. The State argues that

---

to search the interior because [the dog] indicated that the car contained drugs while sniffing the car's perimeter).

[113] *Id*.; *see also United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012) (pre-*Jardines* case holding a drug-dog's sniff inside of a vehicle after instinctively jumping into the car was not a search but failing to discuss *Jones*); *United States v. Pierce*, 622 F.3d 209, 213-14 (3d Cir. 2010) (pre-*Jones* and *Jardines* holding there was "no error in the District Court's finding that [the drug dog] altered to narcotics in Pierce's glove box, jumped through an open door and alerted . . . and in so doing acted instinctively and without facilitation by his handler . . . conclud[ing] that [the] interior sniffs, as a natural migration from his initial exterior sniffs did not constitute a search requiring a warrant or probable cause"); *United States v. Vasquez*, 555 F.3d 923, 930 (10th Cir. 2009) (pre-*Jones* and *Jardines* upholding the legality of an interior sniff when the dog's jump into the car was instinctual rather than orchestrated and the officer did not ask the driver to open the point of entry but also noting the district court's finding that there were alerts outside of the vehicle was not clearly erroneous); *United States v. Moore*, 795 F.3d 1224, 1232 (10th Cir. 2015) (relying on pre-*Jones* and *Jardines* precent to conclude, alternatively, that if the dog's alert did not establish probable cause until after he entered the vehicle, the Fourth Amendment was not violated although finding nonetheless that the dog alerted prior to entry); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (pre-*Jones* and *Jardines* holding that, pursuant to the automobile exception, there was no Fourth Amendment violation when a dog jumped into a vehicle's hatchback because the officer did not encourage the dog's action).

[114] *Jardines*, 569 U.S. at 5 (citing *Jones*, 565 U.S. at 406).

[115] *Id.* (citing *Knotts*, 460 U.S. at 286 (Brennan, J., concurring in the judgment) (recognizing Fourth Amendment protections apply "when the Government *does* engage in [a] physical intrusion of a constitutionally protected area")).

the intrusion was minimal, that it conveyed limited information, and that Appellee had little privacy interest in the odors emanating from the vehicle particularly because the officer did not cause the window to be left open during the sniff. The investigating officer approached the passenger window during the traffic stop, though it is true he did not instruct the passenger to leave the window down during the open-air sniff. But we decline to find the intrusion minimal given that Jaks physically intruded into the vehicle on three occasions. While the State may be correct that, on appeal, Appellee did not contest the conclusion that the officer had reasonable suspicion, a warrant or probable cause was required to conduct a Fourth Amendment search.[116] The State also argues again that law enforcement should not be liable for the dog's instinctive conduct in this case. But, as we have already determined, the dog was acting as a tool of law enforcement, and we decline to carve out some of the dog's behavior as instinctive while it is being used to obtain information. Because there was a governmental intrusion into a protected area for the purpose of obtaining information, which was used to establish probable cause, there was a Fourth Amendment search.

Finally, the State argues that even if there was an unreasonable search, the suppression of evidence "makes little sense" because the dog has its own

---

[116] *Marcopoulos v State,* 538 S.W.3d 596,599 (Tex. Crim. App. 2017) ("Pursuant to the Fourth Amendment, a warrantless search is *per se* unreasonable unless it falls within a warrant exception. The automobile exception allows for the warrantless search of an automobile 'if it is readily mobile and there is probable cause to believe it contains contraband.'") (Tex. Crim. App. 2017).

agency and thus, the justifications for suppression such as deterrence of official misconduct do not apply with equal force. The State points the Court to *State v. Mumford*, an Iowa state case, that held that a dog's "fleeting touch of the passenger door and *de minimis* intrusion into the vehicle cabin through a window left open by a passenger does not justify the exclusion of evidence."[117] But the majority in that case failed to address the physical-intrusion principles in *Jones* and *Jardines* as noted by the dissent in *Mumford*.[118] Furthermore, the court described the intrusion into the vehicle's interior in that case as "momentary" and "almost imperceptible."[119] Here, Jaks returned to the window three times, each time sticking his head into the vehicle's interior as evidenced by screen captures from the State's exhibit included above. Law enforcement was utilizing Jaks to obtain information during an open-air sniff, he obtained that information by physically intruding upon a constitutionally protected area. The dog's alert was used as probable cause to search the vehicle. As a result, the trial court properly suppressed the evidence obtained from that search.[120]

---

[117] *State v. Mumford*, 14 N.W.3d 346, 353 (Iowa 2024), *cert. denied*, 2025 WL 2823719 (2025).

[118] *Id.* at 357 (Oxley, J., dissenting) ("*Jones* and *Jardines* make clear that a drug dog's trespass into a car during an exterior sniff converts what would be a non-search under *Caballes* into a search") (citing *State v. Randall*, 496 P.3d 844, 853 (2021)).

[119] *Id.* at 348.

[120] *Segura v. United States*, 468 U.S. 796, 804 (1984) ("[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'").

## <u>Conclusion</u>

The drug-detection dog's repeated physical intrusion into the interior of Appellee's vehicle during an open-air sniff for contraband amounted to a Fourth Amendment Search conducted without probable cause. Consequently, the trial court acted within its discretion when it granted Appellee's motion to suppress the evidence.  We affirm the court of appeals.

Delivered: October 30, 2025

Publish